ABNER KRETZER vs. HARRY E. LORSHBAUGH.

*Agreements to will land: rights against heirs at law. Agreements to repay money advanced for purchase of land; express and implied promise. Failure of consideration. Mortgages: equity of redemption; equitable assignment of—.*

In general, an action for money had and received will lie to recover money paid by the plaintiff to the defendant for a consideration that has wholly failed.     pp. 566, 567

H. E. L. advanced $100 to M. R. as part of the purchase price for certain land the latter was to buy. It was agreed, in consideration thereof, that M. R. should not alienate the land without L.'s consent, or without repaying to him, with interest, all sums of money he had advanced; also that on the death of M. R. the land should become the absolute property of said H. E. L. free from any and all claim of those claiming under M. R. The property was subsequently mortgaged and upon the death of M. R. intestate it was sold, by order of Court, in proceedings under a creditor's bill filed by H. E. L. against the heirs of M. R. and the executors of the mortgagee in order to satisfy the mortgage. It was *held,* that the equity of redemption was represented only by the surplus proceeds of sale in the hands of the assignee of the mortgage.     p. 568

This agreement could not operate as a deed or as a will, nor as a formal conveyance or legal assignment of the equity of redemption.     p. 568

But it operates as an equitable assignment to H. E. L. of all the interest M. R. had in the property.     p. 567

Heirs at law of M. R. had no other rights in the equity of redemption than M. R. would have had. While the legal title was in them, they hold in trust for H. E. L., who is entitled as against them to the decree of a court of equity to enforce his right in the most expeditious proceedings available.

    p. 569

Any words or transaction which show an intention on one side
to assign and on the other to receive, if there is a valuable
consideration, will operate as an effective equitable assign-
ment, and there is no need for the assignee to formally accept.
p. 568

Where there is an express promise to pay upon a certain con-
tingency, there can be no implied promise to pay without
regard to such contingency.                                p. 567

*Decided February 29th, 1912.*

Appeal from the Circuit Court for Washington County
sitting in equity (KEEDY, J.) .

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-
BRIDGE, JJ.

*A. J. Long,* for the appellant.

*Scott M. Wolinger* submitted a brief for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for
Washington County as a Court of Equity, and the principal
question arises upon the construction and effect of the fol-
lowing agreement between the appellee, Harry E. Lorsh-
baugh, and Malinda Ridenour, deceased, whose heirs at law
are the appellants.

"This memorandum of agreement made this day of August,
1903, by Malinda Ridenour, of Hagerstown, Maryland, witness-
eth, that whereas Harry E. Lorshbaugh has advanced unto me,
Malinda Ridenour, the sum of $100, the receipt of which I
hereby acknowledge, as part of the purchase price of the prop-
erty recently purchased by me of Charles T. Semler, which said
property is situated on the south side of Liberty Street, in
Hagerstown, and is now occupied by Pinkney Cramer as tenant,
and whereas the said Lorshbaugh has advanced divers other

sums to be used in improvements on the said property; now, therefore, this is to certify to all therein concerned that I, the said Malinda Ridenour, have agreed with the said Harry E. Lorshbaugh that in consideration of the said sums of money to me advanced I will not alienate the said property without the consent of the said Lorshbaugh, and without paying him the sums of money advanced to me, with interest thereon; and I have further agreed that in case of my death the said property shall become the absolute property of the said Harry E. Lorshbaugh, free from all claims of all who may attempt to claim under me; it being the intent thereof that in consideration of certain moneys paid me, I have agreed that, in case the said Lorshbaugh survives me, all my interest in the said property shall become the interest of the said Harry E. Lorshbaugh. Witness my hand and seal.

Test:                  MALINDA RIDEN. (Seal).''

Malinda Ridenour died intestate about December 19th, 1908, seized of a house and lot in Hagerstown, upon which there was a mortgage of $300, held by Alexander Armstrong, dated August 15th, 1903, and leaving as her heirs at law a brother, a sister and a niece, named in the proceedings.

A short time after her death, Harry E. Lorshbaugh filed a creditors' bill in the Circuit Court for Washington County against the heirs of the said Malinda Ridenour, and against the executors of said Alexander Armstrong, then deceased, alleging that she was in her life time indebted to him in the sum of $407.25, as set out in an account filed with the bill as an exhibit, the items therein being money loaned August 15th, 1908, $130; money advanced to pay interest on Armstrong mortgage, $90; money to repair house, $71.00; expenses, sickness and burial, $116.25, and alleging that she left no personal estate of any value. The heirs of Malinda Ridenour answered admitting her death intestate and that she died seized of the house and lot mentioned, but denied that she left no personal estate, and that she was indebted in any manner to said Lorshbaugh. They also admitted the execution of the Armstrong mortgage, but demanded proof

that it was still unpaid. The executors of Alexander Armstrong answered, claiming that the mortgage was still due and unpaid with interest from August 15th, 1908, and consented the property should be sold as prayed, provision to be made for the payment of their mortgage out of the proceeds of sale.

Proof was made as to who were the heirs at law as stated in the bill, and that Malinda Ridenour died seized of the house and lot mentioned, and a copy of the Armstrong mortgage was put in evidence, with a copy of a deed from Charles T. Semler and wife to Malinda Ridenour of even date with the mortgage. Semler testified that the negotiations for the lot were conducted by Lorshbaugh, that the price was $400, which he received by a check of Alexander Armstrong, and he made the conveyance to Malinda Ridenour by Lorshbaugh's direction. An agreement of counsel was filed showing that Lorshbaugh and Malinda Ridenour, kept house together and lived together as husband and wife in Hagerstown from 1884 to 1885 to the time of her death.

Robert D. Kochenour testified that he had known both those persons ever since he could remember, and remembered the purchase of the Semler property, and that Lorshbaugh sold a house he had owned, not long before the Semler purchase. He identified the agreement first mentioned herein as a paper he had seen before, and testified that in the spring following the purchase of the Semler property, Lorshbaugh called to him on the street, and he went over to the house where Lorshbaugh and Malinda then were, and had that paper, and that Lorshbaugh told him he wanted him to see that paper signed and told him to read it; that he read it to them, and Malinda said she was going to sign, and he saw her sign it and deliver it to Lorshbaugh. He said Malinda thought there was not room enough on the paper for her full name, and that was why her full name does not appear; that he told her that did not matter; he did not think they would ever have occasion to use it, and that he meant by that,

he always thought Harry would die first. He said she told him that Harry was paying the interest on the mortgage, and was giving her five dollars a week to put away to pay on the mortgage.

Mrs. Semler testified that Malinda told her Lorshbaugh had paid part of the purchase money and was to get it back out of the property. There was no testimony offered by the defendants.

In January, 1910, Alexander Armstrong, Jr., to whom the mortgage had been assigned by the executors of his father, obtained an order of Court, authorizing him, on account of the failure of the parties to the cause, to bring the case to a hearing, to sell the property under the power in the mortgage, and directing him after payment of the mortgage debt, interest, costs and commissions, to hold the residue of the proceeds of sale subject to the further order of the Court, and the property was so sold February 22nd, 1910, for $540, and the sale was ratified September 5th, 1910.

There was no evidence sustaining the three last items in the account filed with the bill, and the Court so found in the opinion filed in the case. The learned judge of the Circuit Court held that the agreement mentioned showed that Lorshbaugh had advanced $100 part of the purchase money and was entitled to be repaid said sum with interest from August 15th, 1903, and so decreed, and directed the auditor in stating an account in the case where the sale was made, after payment of the mortgage debt, interest, commissions and costs of sale, to distribute the surplus, first to the payment of costs in the creditors bill case, and then to the payment of the $100 with interest from August 15th, 1903, and directed a copy of said order to be filed in the sale case also.

The learned judge of the Circuit Court, without referring to adjudged cases, rested this conclusion upon the general statement in *Cyc.*, Vol. 27, p. 855, that an action for money had and received will lie to recover money paid by plaintiff to defendant for a consideration which has wholly failed,

and of the correctness of that doctrine we think there can be no doubt.

But he also said there was another view which, in his judgment, entitled the plaintiff to relief in the premises, and that was, that the agreement mentioned, operated, under the existing circumstances, as an equitable assignment to Lorshbaugh of all her interest in the property, and in our opinion this ground is the proper ground, and affords the proper measure of relief upon principle.

It will be seen that the agreement provided for two contingencies, in either of which the plaintiff was entitled to some remedy, but the remedy was not the same in the two contingencies. The first contingency was that if she alienated the property, as she might legally do without his concurrence, then, and upon that condition only, there was an express, rather than an implied, promise on her part to pay him not only the $100 advanced as part of the purchase money, but also the other sums not definitely named but capable of exact ascertainment, which the agreement states he had advanced for repairs and improvements. This contingency could only occur in her lifetime, and until it did occur she came under no obligation to pay the sums so advanced. Where there is an express promise to pay upon a certain contingency only, there can be no implied promise to pay without regard to the contingency.

The second contingency was that if she died seized of that property, and he survived her, *all* her interest therein should become his absolute property. This contingency could only occur on her death.

The deed to Malinda and the mortgage to Armstrong were both executed on August 15th, 1903, and the agreement under consideration was apparently prepared for execution on the same date, as it reads: "This agreement made this .......... day of August, 1903," etc., though it appears from Kochenour's testimony that it was actually signed the following spring. But however, this may be the only interest she ever had in the property was the equity of redemp-

tion, the legal estate conveyed to her by the deed passing at the same moment to Armstrong by the mortgage, which was delivered concurrently with the delivery of the deed. It is true that the agreement can not operate as a deed or as a will, nor is it a formal conveyance or *legal* assignment of the equity of redemption. As the property has been sold, by order of the Court in this cause under the power contained in the mortgage, since the filing of the bill, there is nothing upon which a decree for sale could operate; but the equity of redemption is represented by the surplus proceeds of sale in the hands of the assignee of the mortgage, and the agreement operates as a good equitable assignment of the fund representing the equity of redemption. In 4 *Cyc.* 46, the author of the article on *Assignments,* JUDGE ROMBAUER, of St. Louis, says: "Any words or transaction which show an intention on one side to assign, and on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment," and there is no necessity that the assignee should formally accept the assignment. 1 *Amer. and Eng. Enc.* 835-6-7.

In *Sanguinnett* v. *Webster,* 153 Mo. 370, the Court said: "Any language or act which makes an appropriation of the fund, amounts to an equitable assignment of that fund."

In *Holmes* v. *Evans,* 129 N. Y. 140, JUDGE ANDREWS said: "An equitable assignment has been defined to be such an assignment as gives the assignee a title, which, although not cognizable at law, equity will recognize and protect. Such an assignment passes an immediate equitable interest in the *subject,* although it is not essential to the creation of the interest that it should be immediately enforceable by suit for specific performance to recover the interest assigned. * * * There must undoubtedly be a purpose to pass a present interest, but that interest may be absolute, or qualified, a right to the immediate possession or enjoyment, or a right to such enjoyment, *postponed* until the happening of some future event. In other words, the assignment may be made, subject to limitations, qualifications, and *conditions,* such

as might be inserted in the conveyance or assignment of the legal estate in the same subject." The learned judge of the Circuit Court has given in his opinion, a very clear illustration of this view of the case, saying: "Suppose the agreement had been made in consideration of said advancements and payments made by said Lorshbaugh, that the said Malinda had agreed that at the end of *five years* all the interest of said Malinda in said property should become the interest of said Lorshbaugh; could there have been any question of the right of said Lorshbaugh, at the end of said time, to the execution of such a paper as would have been necessary and proper under the law to pass such interest from said Malinda to him? I do not think so. Under such an agreement, after the expiration of said five years, the said Malinda would have held said interest in trust for said Lorshbaugh, and he would have been entitled to the aid of a Court of equity, if necessary, to secure him his rights in the premises. I can see no difference between the case supposed, and the case under consideration." Nor can we discover any difference in principle. Her heirs at law have no other or greater rights in this equity of redemption than she could have had in the case supposed. The legal title may be in them, but they hold it in trust for him, and he is entitled as against them to the aid of a Court of equity to enforce his right in the most expeditious available proceeding. This view would have somewhat increased the amount allowed by the decree to the appellee but as he has not appealed the decree will be affirmed in the form in which it was passed.

> *Decree affirmed, costs to be paid by the appellant.*