## UNION TRUST COMPANY *v.* ELEANOR B. BIGGS.

*Sale Under Mortgage—Effect on Title—Rights as to Surplus Proceeds—Attachment—Equitable Lien— Creation by Agreement—Judgment Creditor—Priorities.*

In the case of a sale under a power in a mortgage, although the jurisdiction of equity does not become complete until the subsequent filing of the report of sale, yet the sale virtually forecloses the mortgage and divests all rights of redemption in the mortgagor.    p. 55

After a sale by the assignee of a mortgage under a power in the mortgage, the purchaser has the equitable interest in the land, with a right to the legal title upon the final ratification of the sale by the court and payment of the purchase money, while the assignee holds the legal title in trust for the purchaser for the completion of the sale by its ratification, the

satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce payment of any of the purchase money by a resale at the buyer's risk.                    p. 55

Although the sale is incomplete until ratified by the court, and until then the purchaser's title is inchoate and equitable, the final ratification retroacts, so that the purchaser is regarded by relation as the equitable owner from the time of sale, and entitled to all the intermediate rents and profits.        p. 56

Even though the purchase money be paid, the legal title of the purchaser does not vest until the deed to him is delivered, but, upon its delivery, it vests the property in the purchaser from the day of sale.                        p. 56

After the day of a sale under a power in a mortgage, no creditor can acquire a lien upon the mortgagor's interest in the land or equity of redemption by simply obtaining a judgment against the mortgagor, since a judgment lien exists only by reason of the creditor's right to make his debt by execution out of the judgment debtor's land, and this is determined by the real and not the apparent rights of the debtor in the land.

p. 56

A creditor of a mortgagor, who does not secure a judgment until after a sale under a power in the mortgage, subsequently ratified by the court, acquires by his judgment no lien on the mortgagor's interest in the obligation of the purchaser to pay the purchase price, this being merely a chose in action.    p. 57

By the issue and laying of an attachment on mortgaged land belonging to a non-resident, the latter's creditor obtained an inchoate lien upon her equity of redemption.            p. 57

The inchoate lien of a non-resident attachment continues and binds the property attached, and abides the issue of the short note case, unless the debtor appear and give better security than the property affords by furnishing a good and sufficient bond, with sureties.                        p. 57

If a bond with sureties is not given by the debtor, the inchoate lien of the attachment is perfected by a judgment of condemnation, which is not for the delivery of the particular property seized to the creditor, but which, in the case of land or an equitable interest therein, is a judgment *in rem,* whereby the

land or interest therein is rendered liable to execution and sale
to the extent necessary to discharge the debt.            p. 58

In view of Code, art. 9, sec. 28, allowing any papers in
attachment proceedings to be amended, any defects in such pro-
ceedings were waived by an agreement filed therein, by which
the attachment was released as to part of the property attached
and retained as a valid attachment on the remainder to the
extent of the recovery in the short note case.            p. 58

An agreement, filed in an attachment proceeding, and based
on a valuable consideration, by which the attachment was
released, as to part of the land attached, and "retained as a
valid attachment against the remainder of the tract" to the
extent of the recovery in the short note case, did not authorize
the entry of a judgment of condemnation, and was informal and
insufficient at law as a pledge, mortgage, or assignment, but was
effective as an equitable lien for the amount of such recovery.
                                                    pp. 59, 60

Where the intention to hold and charge a particular interest
or estate as security for the payment of a debt or other obliga-
tion is clearly manifested in writing, but frustrated through
some default of form or procedure, an equitable lien on such
interest or estate is created, which is enforceable as against not
only the original promisor but also his heirs, executors, admin-
istrators, voluntary assigns, and purchasers or incumbrancers
with notice.                                            p. 60

Since a judgment is but a general lien and the judgment cred-
itor is not a purchaser for value, its lien must yield to the
superior equity of a prior specific equitable lien, although the
judgment is on a cause of action existing before the creation of
the equitable lien.                                    pp. 60, 61

Where, after the creation by agreement of an equitable lien
on land previously mortgaged, the land was sold under the
mortgage, the equitable lien attached to the fund into which the
equity of redemption passed by the foreclosure, as against one
who, after the creation of the equitable lien, obtained a judg-
ment against the owner of the equity of redemption on a claim
existing prior to the creation of the equitable lien.      p. 61

*Decided April 8th, 1927.*

Appeal from the Circuit Court for Anne Arundel County, In Equity (Moss, J.).

Proceeding by John S. Strahorn, assignee, to foreclose a mortgage on certain land, in which the Union Trust Company and Eleanor B. Biggs filed petitions, asking payment, from the surplus proceeds of sale, of their respective claims against Mary W. F. Speers, the owner of the equity of redemption. From a decree according priority to the claim of said Eleanor B. Biggs, said trust company appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter H. Buck* and *Ridgely P. Melvin,* for the appellant.

*Daniel R. Randall,* for the appellee.

PARKE, J., delivered the opinion of the Court.

On June 23rd, 1922, Eleanor B. Biggs caused to be issued out of the Circuit Court for Anne Arundel County an attachment against Mary W. F. Speers, a non-resident, on an alleged debt of $3,650, and the sheriff laid the attachment on the day of its issuance on certain land of the debtor, and made on that day the return of "property attached as per schedule and copy posted at Ct. House door," as appears from the docket entry in the attachment case. On the same day the short note case was docketed. Nothing was done in either case until October 9th, 1922, when separate motions were made in the attachment case by the Speers Land & Clay Works, Inc., and by the debtor, to quash the attachment. The ground upon which this corporation and the debtor intervened was that the latter had conveyed to the corporation, on May 31st, 1922, one hundred acres of land of the tract of one hundred and fifty-two then owned by the debtor and on which the attachment had been attempted to be levied. While these motions were filed separately, they were identical in the grounds assigned, which attacked the sufficiency of the affidavit of the cause of action of the

short note case and of the description of the property sched-
uled, which denied the issuance of a summons for the de-
fendant or an actual levy having been made upon the land;
and which asserted that, although the tract of land was
occupied, the sheriff had falsely returned that no person
was in possession. The next and final act of the parties in
the attachment case was on November 9th, 1922, when it
was agreed in writing by the attaching creditor and debtor
that the attachment should be released as to the one hundred
acres of land conveyed by the debtor to the corporate inter-
venor before the attachment was issued, and that the attach-
ment "is retained as a valid attachment against the re-
mainder of the tract of which the said one hundred acres
was a part, to avail to the extent of the recovery, if any, of
the plaintiff against the said Mary W. F. Speers in the
case. Short note case No. 12, Appearances October Term,
1922, for trial at April Term, 1923." This agreement con-
tained a reference to the date and place of record of the
deed for one hundred acres, and was filed, with an order
for a release of the one hundred acres, on November 9th,
1922.

No further action was had in the short note case until
July 11th, 1923, when the suit was tried and a verdict of
$2,525.60 was rendered in favor of Eleanor B. Biggs against
Mary W. F. Speers. The verdict was followed by a motion
for a new trial, which was overruled, and judgment was
extended on the verdict, on March 19th, 1924.

At the time the attachment was begun there was a mort-
gage lien upon the residue of the tract of land owned by
Mary W. F. Speers, and, because of her default, foreclosure
proceedings, under the power contained in the mortgage,
were begun on February 28th, 1923, by the assignee of the
mortgagee, who made sale of the property, and filed his
report of such sale on March 22nd, 1923, whereupon an
order *nisi* was passed, and afterwards exceptions were filed
to its ratification; but the sale was finally ratified on March
5th, 1924, and later the funds became available for distri-
bution.

After the beginning of the foreclosure proceedings and after the assignee of mortgagee had filed his report of sale, the Union Trust Company of Maryland obtained, on May 11th, 1923, a judgment by confession against Mary W. F. Speers in the Circuit Court for Anne Arundel County for the sum of $812, with interest and costs of suit and counsel fees of $81.20.

The Union Trust Company and then Eleanor B. Biggs filed in the mortgage foreclosure proceedings their respective petitions to be allowed their claims out of the surplus funds remaining in the hands of the assignee of the mortgagee after the payment of the mortgage indebtedness, and the auditor gave preference to the judgment claim of the Union Trust Company, which left an insufficient residue to pay in full the Biggs claim. The appellee excepted to the auditor's account and the chancellor decided that Eleanor B. Biggs was entitled to be allowed priority, and from this decree the Union Trust Company has appealed.

1.   With the filing of his bond, the assignee of mortgagee assumed the discharge of the trust created by the power of sale contained in the mortgage, and, although the jurisdiction of equity did not become complete until the subsequent filing of his report of sale, yet the sale of the mortgaged premises under the power of sale in the mortgage deed virtually foreclosed the mortgage and divested all rights of redemption which had remained in the mortgagor until the sale. *Warehime v. Carroll County Bldg. Assn.,* 44 Md. 512, 519; *Berry v. Skinner,* 30 Md. 567, 572-574; *Miller's Equity,* secs. 463, 466; *Albert v. Hamilton,* 76 Md. 304, 307. After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and he was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money. The assignee, on the other hand, held the legal title in trust for the purchaser for the completion of the sale by its ratification, the satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce the payment of any of the purchase money by a resale at the risk of

the buyer. So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor. It is true that the sale is incomplete until ratified by the court, and that the purchaser's title is an inchoate and equitable one from the day of sale until the final ratification, which, however, retroacts so that the purchaser is regarded by relation as the equitable owner from the time of the sale, and entitled to all the intermediate rents and profits of the estate. Although he thus becomes the substantial owner from the time of the sale, and the property is at his gain if it appreciate and at his risk in case of loss by fire or through depreciation, yet, notwithstanding the purchase money be paid, the legal title of the purchaser does not vest until the deed to him is delivered, but, upon its delivery, this deed is not effective merely from the day of its execution, but vests the property in the purchaser from the day of sale. It follows that, after the day of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land. The day of sale, therefore, marked the close of the period in which any creditor could acquire a lien upon the mortgagor's interest in the mortgaged land or equity of redemption by simply obtaining a judgment against the mortgagor, since a judgment lien upon real estate or an equitable interest in land only exists because it gives the judgment creditor the right to make his debt out of the land or equitable interest in land of the judgment debtor, with the correlative liability of such property of the debtor to be sold by way of execution for that purpose. The real and not the apparent rights of the judgment debtor in the property measure the rights of the judgment creditor. *Davidson v. Myers,* 24 Md. 538, 555, 556; 2 *Poe, Pl. & Pr.,* secs. 374, 375, 666; *Miller's Equity,* secs. 453, 454, 463, 466, 498, 510, 512, 513; 1 *Pomeroy, Eq. Jur.,* secs. 368, 372; *Hampson v. Edelen,* 2 H. & J., 64, 66, and notes in *Brantly* edition; *Jordan v. Reynolds,* 105 Md. 288, 294; *Sweet v. Jacocks,* 6 Paige Ch. (N. Y.), 355, 362; 2 *Freeman,*

*Judgments* (5th Ed.), sec. 963, p. 2022; *Gregory v. Chapman,* 119 Md. 495, 503; Compare *Werner v. Clark,* 108 Md. 627.

What has been said in the course of this opinion is not in conflict with the recognized right of a judgment creditor, who secures his judgment at any time after a sale of the mortgaged property and before a distribution of the funds, to acquire by attachment a lien on whatever residue of trust funds may remain belonging to the mortgagor after the payment of the mortgage debt and all prior claims. The appellant, in this case, did not resort to an attachment, and, as his judgment was obtained after the mortgaged property was sold at a sale later duly ratified by the court, and, therefore, at a time when the mortgagor's equitable estate had been determined, the appellant acquired no lien by his judgment on the mortgagor's interest in the obligation of the purchaser to pay the purchased price, which was not a right or estate in land but a chose in action. *Western Bank v. Union Bank,* 91 Md. 613. See *Hebb v. Moore,* 66 Md. 167, 169; *Miller's Equity,* sec. 488; *Hodge & McLane on Attachments,* sec. 163; *Bennett on Lis Pendens,* secs. 189, 188; 1 *Daniell's Ch. Pl. & Pr.* (6th Am. Ed.), 280, 281.

It is a necessary consequence of the rules discussed that the appellant had neither any legal or equitable lien entitling it to priority in the surplus funds.

2. Through the issue and laying of her attachment, Eleanor B. Biggs, the appellee, acquired an inchoate lien upon the equity of redemption of Mary W. F. Speers, a non-resident, in a tract of land which she had mortgaged. The object of the attachment was to induce the appearance in the short note case of the debtor, by the seizure of her property, and to secure payment of the debt by acquiring a specific lien on the particular equitable estate attached. *Philbin v. Thurn,* 103 Md. 342, 351; *Tonn v. Collins,* 116 Md. 52, 54. This lien continues and binds the property attached, and abides the issue of the short note case, unless the debtor appear and give other and better security than the property affords by furnishing a good and sufficient bond, with sureties. If such

a bond be not given, the inchoate lien of the attachment is perfected by a judgment of condemnation, which is not for the delivery of the particular property seized to the creditor, but which, in the case of land or an equitable interest or estate in land, is a judgment *in rem,* whereby the land or equitable interest or estate in land is rendered liable to execution and sale to the extent necessary for the discharge of the attaching creditor's debt. Compare *Western Bank v. Union Bank,* 91 Md. 613, 625, and *Rhodes v. Amsinck,* 38 Md. 345; *De Bearn v. Winans,* 115 Md. 139, 148, and *Martin v. Grafflin,* 68 Md. 545; *Early v. Dorsett,* 45 Md. 462, 468. Here the debtor appeared in both the attachment and the short note case. She and a corporation, to which she had conveyed one hundred acres of the tract of land attached before the laying of the attachment, moved that the attachment be quashed for reasons which have been stated. Whatever the substance of the several grounds upon which their motions were based, the statute permitted amendments to be made in the affidavit, short note, declaration, voucher, pleadings, interrogatories, and all other papers in the attachment proceedings, and the parties waived any defects by the written agreement which was filed in the attachment case on November 9th, 1922. Code, art. 9, sec. 28; *De Bearn v. De Bearn,* 119 Md. 418, 429, 430; *De Bearn v. Winans,* 115 Md. 139, 148-150; *Walter & Co. v. Bickham & Moore,* 122 U. S. 320.

The body of the agreement, which was signed by the respective attorneys of the litigants, was of this form:

"It is agreed this 9th of November, 1922, that the attachment in this case (No. 130 Trials, October Term, 1922) is released as to the one hundred (100) acres of land conveyed by Mary W. F. Speers to Speers Sand and Clay Works, Inc., by and of May 31, 1922, recorded in Liber W. N. W. No. 52, folio 62, etc., among the Land Records of Anne Arundel County, but is retained as a valid attachment against the remainder of the tract of which the said one hundred acres is a part, to avail to the extent of the recovery, if any, of the plaintiff against the said Mary W. F.

Speers in the case—(Short Note Case No. 12, Appearances, October Term, 1922—for trial at April Term, 1923)."

On the day this agreement was filed, the attaching creditor entered on the trial docket in the attachment case an order releasing the specified one hundred acres from the lien and operation of the attachment, and thus performed her part of the contract.

The agreement was upon a valuable consideration, and by its terms described the remaining parcel of about fifty acres of land so as to be susceptible of identification; established that the property had been attached by the sheriff and that it was the mortgaged land of the debtor; and, while leaving its possession in the debtor, promised, in effect, that the mortgagor's specific interest in this particular parcel of land should be held or charged with a subsisting attachment lien as security for the payment of the creditor's claim in the amount thereafter to be adjudged to be due in the trial of the short note case between the creditor and debtor as the litigants. Since this agreement made the effectiveness of the lien intended to be retained dependent upon the establishment of the creditor's claim at law, it would have been premature to have taken any action in the attachment case until a trial and judgment in the short note suit. So the attaching creditor did not proceed further in the attachment case, but prosecuted her action, and eventually obtained a judgment, in an amount less than her original demand. Compare *Hodge & McLane on Attachments,* sec. 50.

With the rendition of the judgment in the short note case for the attaching creditor against the debtor, the sole condition was fulfilled for the creditor to receive the benefit of her charge under this agreement upon the debtor's equity of redemption in the mortgaged land, but the equity of redemption had been ended by the foreclosure sale before the appellee's judgment had been obtained. Further, the appellee had relied upon the agreement, and neither had sought nor obtained a judgment of condemnation, which

would have had merely the effect of adjudicating the property originally attached as that of the debtor and applicable to the satisfaction of the claim of the attaching creditor, and this legal result of a judgment of condemnation is precisely the effect intended to be accomplished by the agreement in the present case.  *West v. Wood Co.,* 140 Md. 514, 521.  But this agreement did not authorize the entry of a judgment of condemnation, and it was informal and insufficient at law as a pledge, mortgage, or assignment, so no property right in the equity of redemption was acquired at law by the agreement.  But it can not be doubted that it was the express object of the contracting parties for the remaining land to be subject to an effective charge or lien which would secure to the creditor the payment of any judgment she might recover on account of the cause of action on which the attachment had been issued, and that this charge or lien was designed to be something in addition to the personal obligation of the debtor to pay.  The mortgagor has long since received and enjoyed the consideration for her undertaking, which equity will not permit her now to repudiate.  It is an accepted principle of equity that where, as here, the intention to hold and charge a particular interest or estate as security for the payment of a debt or other obligation is clearly manifested in writing, but frustrated simply through some default of form or in procedure, an equitable lien upon such interest or estate is created, which is enforceable against the property in the hands of not only the original promisor, but as against his heirs, executors, administrators, voluntary assigns, and purchasers or encumbrancers with notice.  See 3 *Pomeroy, Eq. Jur.* (4th Ed.), secs. 1235-1237.  Since a judgment is but a general lien and the judgment creditor not a purchaser for value, its lien must yield to the superior equity of a prior specific lien.  As the prior specific equitable lien in the pending appeal was designed to retain and appropriate the inchoate lien upon particular property of an existing attachment at law as security for the payment of a debt in an

amount to be ascertained by litigation between the creditor and debtor, the nature of this equitable lien is closely analogous to a defective mortgage lien, and so, as in the case of an equitable mortgage lien, the specific equitable lien created by the agreement will be paramount to subsequent judgment creditors who become such on causes of action which existed before the creation of such equitable lien. *Textor v. Orr,* 86 Md. 392, 396-399; *Leupold v. Weeks,* 96 Md. 280, 289, 290; *Dyson v. Simmons,* 48 Md. 207, 214, 221; *Hampson v. Edelen,* 2 H. & J. 64, 66; *Moale v. Buchanan,* 11 G. & J. 314, 326; *Knell v. Building Assn.,* 34 Md. 67; *Carson v. Phelps,* 40 Md. 73, 99; *McMechen v. Maggs,* 4 H. & J. 132; *Hartsock v. Russell,* 52 Md. 619, 625; *Glenn-Morris Co. v. McColgan,* 100 Md. 479; *Praeger v. Implement Co.,* 122 Md. 303, 308; *Cramer v. Roderick,* 128 Md. 422, 428, 429; *Getz v. Johnson,* 143 Md. 542, 549; *Kretzer v. Lorshbaugh,* 117 Md. 562, 568; *Economy Sav. Bank v. Gordon,* 90 Md. 486, 505; *Goldsborough v. Tinsley,* 138 Md. 411, 419; *Hoffman v. Gosnell,* 75 Md. 577, 592.

The equitable lien of the appellee in the equity of redemption was subject to the outstanding mortgage, but followed and attached to the fund into which the equitable interest had passed by foreclosure. The mortgagor could not prevent this fund from being applied to the payment of the claim of the appellee, and the appellant is in no better position, since when, on November 9th, 1922, the appellee and the mortgagor entered into the agreement in question, the appellant was a subsisting creditor of the mortgagor, because its later judgment claim was obtained on an unpaid note which was issued by the mortgagor as maker on October 2nd, 1922. The appellant, therefore, had neither lien nor equity superior to the specific equitable lien of the appellee and, as this is the simple question brought up on appeal, the decree of the chancellor will be affirmed.

*Decree affirmed, with costs, and cause remanded.*