In re John D. WALLACE, Alice M. Wallace, Debtors.

Warren J. WEINBERGER, Plaintiff,

v.

John D. WALLACE, Alice M. Wallace, Thomas L. Lackey, Trustee, Defendants.

Bankruptcy No. 83–A–0484.
Adv. No. 83–0428A.

United States Bankruptcy Court, D. Maryland, at Rockville.

June 23, 1983.

Neal Melnick, Baltimore, Md., for plaintiff.

Richard S. Labovitz, Baltimore, Md., for defendants/debtors.

Thomas Lackey, Upper Marlboro, Md., trustee.

## MEMORANDUM OF OPINION

PAUL MANNES, Bankruptcy Judge.

This matter is before the court upon the complaint for relief from the automatic stay of 11 U.S.C. § 362 filed by Warren J. Weinberger, plaintiff, against John D. Wallace and Alice M. Wallace, defendants. The issue presented deals with the interrelationship of the Maryland law of foreclosures and federal bankruptcy law. In particular, the court must determine whether it can nullify a Maryland foreclosure proceeding when the trustee's sale has taken place but the trustee's deed has not been delivered. Put another way, given the fact that this court may order the "de-acceleration" of a mortgage and permit Chapter 13 debtors to cure defaults and return to monthly payments, *In re Taddeo,* 685 F.2d 24 (2d Cir. 1982), may it do so, once the auctioneer's hammer has fallen?

The facts in this case are not disputed. On January 28, 1982, defendants borrowed $50,000.00 from the mortgagee and secured the debt by giving back a mortgage in the principal amount of $50,000.00 payable in 60 monthly installments commencing on February 26, 1982. The loan went into default on March 25, 1982, and plaintiff testified that no payments were ever made as scheduled. A mortgage sale was scheduled in 1982, but was not completed as the parties were attempting to work out settlement, and debtors made some payments on account. The note went into default once again, and, after proper notice, a foreclosure sale was scheduled and held on March 9, 1983, at 2:00 p.m. The purchasers at the foreclosure sale were William T. Underwood and Ann M. Underwood, who bought the property for $75,000.00 subject to a first mortgage in the sum of $27,400.00. Debtors scheduled the second mortgage in the sum of $50,000.00, and it thus appears that the property brought less at foreclosure than the total mortgage debt. While their counsel appeared at trial, the Underwoods were not joined as parties defendant.

After the foreclosure sale took place, plaintiff's report of sale was filed in the Circuit Court for Howard County. An order *nisi* was issued by the Clerk on March 30, 1983. The Chapter 13 proceeding was likewise filed on March 30, 1983, causing the automatic stay of § 362 to come into effect. Plaintiff sought leave to proceed with the consummation of the foreclosure sale. *See, In re Pagoda International, Inc.,* 26 B.R. 18 (Bkrtcy.Md.1982) (A scintilla of interest triggers protection under § 362(a).

Under established Maryland law, because the public sale had taken place, the debtors were divested of their equity in the property, and this court may not, in the absence of consent of all parties concerned, reverse the transaction.

At the time of the foreclosure sale, the total indebtedness on the debt secured by

the two mortgages was $77,400.00. A debt of $50,000.00 was scheduled by the debtors on the second mortgage, and plaintiff had testified as to the $27,400.00 balance on the first. Therefore, defendants had no equity in the property in the sense that the property was sold for less than the total encumbrances, without reference to the expenses of sale. *See In re Moore,* 5 B.R. 449 (Bkrtcy.Md.1980); *In re Hawkins,* Adversary Proceeding No. 81–0474A (Bkrtcy.Md. 1982), *aff'd,* Civil Action No. B–82–895, November 16, 1982.

■ In Maryland, legal title does not pass at a foreclosure until ratified by the equity court. *Plaza Corp. v. Alban Tractor Co., Inc.,* 219 Md. 570, 578, 151 A.2d 170 (1958). Nevertheless, after the foreclosure sale, Equity regards the property in the land in the buyer. The sale divests the mortgagor of all rights of redemption remaining in the mortgagor at the time of the sale. *Union Trust Co. v. Biggs,* 153 Md. 50, 55–56, 137 A. 509, 512 (1927); *Billingsley v. Lawson,* 43 Md.App. 713, 406 A.2d 946 (Md. App.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Merryman v. Bremmer,* 250 Md. 1, 241 A.2d 558, 563–64 (1968). Speaking for the Maryland Court of Appeals in the *Biggs* case, Judge Parke pointed out:

> With the filing of his bond, the assignee of mortgagee assumed the discharge of the trust created by the power of sale contained in the mortgage, and, although the jurisdiction of equity did not become complete until the subsequent filing of his report of sale, yet the sale of the mortgaged premises under the power of sale in the mortgaged deed virtually foreclosed the mortgage and divested all rights of redemption which had remained in the mortgagor until the sale. *Warehime v. Carroll County Bldg. Ass's,* 44 Md. 512, 519; *Berry v. Skinner,* 30 Md. 567, 572, 574; *Miller's Equity,* §§ 463, 466; *Albert v. Hamilton,* 76 Md. 304, 307, 25 A. 341. After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and he was

entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money. The assignee, on the other hand, held the legal title in trust for the purchaser for the completion of the sale by its ratification, the satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce the payment of any of the purchase money by a resale at the risk of the buyer. So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor. It is true that the sale is incomplete until ratified by the court, and that the purchaser's title is an inchoate and equitable one from the date of sale until the final ratification, which, however, retroacts so that the purchaser is regarded by relation as the equitable owner from the time of the sale, and entitled to all the intermediate rents and profits of the estate. Although he thus becomes the substantial owner from the time of the sale and the property is at his gain if it appreciate and at his risk in case of loss by fire or through depreciation, yet, notwithstanding, the purchase money be paid, the legal title of the purchaser does not vest until the deed to him is delivered, but, upon its delivery, this deed is not effective merely from the date of its execution, but vests the property in the purchaser from the day of sale. It follows that, after the date of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land. *Biggs* at 512.

The debtors contend there remains an interest in the property which would allow for the curing of the default pursuant to § 1322(b)(5) of the Bankruptcy Code. The Bankruptcy Court for the Northern District of Georgia has supported that position in the case of *In re Gooden,* 21 B.R. 456 (Bkrtcy.N.D.Ga.1982), but that case is distinguishable in that it depends upon Geor-

gia law for its result. Under Georgia law, the receipt of a bid at a foreclosure sale "merely forms a contract between the bidder and the debtor to purchase the property at the bid price." 21 B.R. at 458. A foreclosure is not final in Georgia until a deed has been delivered and the consideration passed. *Id.*

■ Questions regarding deeds of trust and mortgages, their operation and validity, are matters of state law. *Cf. Haas v. Rendleman,* 62 F.2d 701 (4th Cir.), *cert. denied,* 289 U.S. 750, 53 S.Ct. 695, 77 L.Ed. 1495 (1933).

Settled Maryland law is contrary to *Gooden.* After the day of the foreclosure sale, the mortgagor's equity of redemption ceases to exist as an interest in land. *See generally, Pagenhardt v. Walsh,* 250 Md. 333, 243 A.2d 494 (1968); *Waring v. Guy,* 248 Md. 544, 237 A.2d 763 (1968); *Wethered v. Alban Tractor Co.,* 224 Md. 408, 168 A.2d 358, *cert. denied,* 368 U.S. 830, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961).

Debtors testified that the property was worth $155,000.00, which is in excess of the $110,000.00 stated by debtors in their answer to question 13 in their Schedules. Because of Maryland law, it does not matter at all for the purpose of this proceeding whether debtors' estimate is more reliable than the actual price at the foreclosure sale. They were divested of their equity by the sale. If they have complaints concerning the legality of the conduct of the sale, then they have full and complete remedy under Rule W–74 of the Maryland Rules of Procedure. They may file objections to ratification, all in accordance with Maryland procedure. The point is that the debtors did not file their Chapter 13 proceeding prior to the foreclosure sale and did not stop the mortgage proceeding at a time when this court had significant power to afford debtors the relief that they seek in Chapter 13. The debtor testified that he was told that he could file his Chapter 13 proceeding at any time before or after the foreclosure sale. While the law in Georgia might be to this effect, Maryland law is precisely to the contrary. Once the auctioneer's hammer falls, this court is without power to approve a Chapter 13 plan providing for the payment of the mortgage arrears in the absence of consent. A ruling to the contrary would disturb foreclosure proceedings beyond measure. It would discourage bidders and would delay the transfer of property for months on end. Because the Wallaces got bad advice from a mortgage broker regarding the timing of the filing of their Chapter 13 proceeding is no reason to revise the settled law of this state and interfere with the intervening rights of others.

An order will be entered in accordance with this opinion.