**In re Raymond E. FLOWERS, Debtor.**

**Raymond E. FLOWERS, Plaintiff,**

v.

**WASHINGTON FEDERAL SAVINGS BANK, et al., Defendants.**

**Bankruptcy No. 87–00989.**
**Adv. No. 88–0009.**

United States Bankruptcy Court,
District of Columbia.

Oct. 3, 1988.

Claude W. Roxobrough, Washington, D.C., Joseph E. Bankert, Steven G. Norair, Fairfax, Va., Joseph Cahill, Washington, D.C., Richard G. Wise, Stephen H. Abraham, Washington, D.C., for defendants.

## MEMORANDUM DECISION RE MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The plaintiff, Raymond E. Flowers, has sued to contest a foreclosure sale of a residence he and his wife owned known as 32 Madison Street, N.E., Washington, D.C. The defendants are the lender, the trustees under the lender's deed of trust, the foreclosure sale purchaser, and the title company which conducted the real estate closing pursuant to the foreclosure sale. All defendants have moved for summary judgment.

## FACTS

The material facts are not in dispute. Washington Federal Savings Bank ("Washington Federal") held a promissory note from Mr. and Mrs. Flowers calling for principal and interest payments of $531.44 per month and secured by a deed of trust on the Madison Street property. The deed of trust provided for an escrow of yearly taxes on the property but Mr. and Mrs. Flowers were initially allowed instead to pay taxes directly. An addendum to the deed of trust provided:

A. In the event the Lender shall advance any sums under the Note or the Deed of Trust to pay taxes ... upon the property, any such sums so advanced shall be added to the unpaid balance of the principal on the indebtedness represented by the Note ... and shall be due and payable at the option of the Lender upon demand.[1]

Taxes with respect to the subject property were not paid and the property became the subject of tax sales by the District of Columbia for delinquent taxes of $5,998.00. By a letter dated 1987, Washington Federal notified Mr. and Mrs. Flowers of the delinquency and advised that if Washington Federal had to advance funds to pay the taxes "an escrow account may be established and collected along with the regular payment." Because this jeopardized Washington Federal's lien, Washington Federal paid the taxes and redeemed the property from the tax sales. Washington Federal could have demanded Mr. and Mrs. Flowers to pay the entire amount of taxes advanced immediately. Instead, Washington Federal sent Mr. and Mrs. Flowers a letter on April 24, 1987, stating that the property taxes

---

1. The addendum provided that it controlled over any contrary provisions of the main deed of trust. Paragraph 2 of the deed of trust provided that if funds escrowed were insufficient to pay taxes as they fell due. Mr. and Mrs. Flowers were required to pay Washington Federal "any amount necessary to make up the deficiency within 30 days from the date notice is mailed by Lender to Borrower requesting payment thereof." Paragraph 7 to the deed of trust provided that in the event of any proceeding against the property, Washington Federal could disburse sums reasonably necessary to protect its interests and that such sums would be payable upon notice requesting payment. The notice of default eventually given was for 30 days.

had been paid, an escrow account had been established and that, as shown by an enclosed escrow analysis, a monthly escrow payment of $997.56 per month would be required, thus making the total monthly payment $1,529.00 beginning May 1, 1987. The escrow amount included amounts to be held in escrow for the forthcoming taxes due in September 1987 and roughly one-seventh each month of the $5,998 in taxes previously advanced by Washington Federal. Mr. and Mrs. Flowers failed to make payments of the new amount required. On July 1, 1987, Washington Federal sent them notice that their loan was delinquent by the amount of $4,629.52 and that this sum had to be paid by August 1, 1987 in order to cure the breach. The letter warned that if the breach was not cured Washington Federal could declare the entire unpaid balance due without further notice and invoke the power of sale provisions of the deed of trust. This notice complied with paragraph 18 of the deed of trust.

Foreclosure proceedings ensued. Notice of a foreclosure sale was sent to Mr. and Mrs. Flowers by certified mail but they did not claim the mailing from the Postal Service. The foreclosure sale was scheduled for November 13, 1987, at 3:00 p.m. No one who was present at the place of the auction at 3:00 p.m. on November 13, 1987, left that location prior to 3:10 p.m. when the property was sold to the highest bidder for $85,000. (The property was scheduled by Mr. Flowers in his bankruptcy case as worth $95,000.) Following the completion of the auction sale at 3:59 p.m. on November 13, 1987, Mr. Flowers filed his petition in bankruptcy. The deed of conveyance was issued to and recorded by the purchaser after the filing of the petition.

## CONCLUSIONS OF LAW

The complaint herein contains seven counts.

### A. COUNTS I THROUGH VI

 The first six counts are clearly without merit and, in large part, have been receded from by the plaintiff.[2] Therefore, the defendants' motions for summary judgment are granted as to to Counts I through VI.

2. Count I alleges that Mr. Flowers was never given a copy of any agreement to increase payments under the deed of trust to $1,500 and alleges that if such an agreement exists, Mr. Flowers was intentionally deceived into signing it. The deed of trust itself provided that Washington Federal could call for immediate payment of all taxes it advanced and there was no separate agreement.

Count II alleges that Mr. Flowers did not receive notice as required by D.C.Code Section 45–715 of the foreclosure sale. But the statute does not require actual receipt. Proper notice was given.

Count II further alleges that Washington Federal gave no notice of acceleration of the principal balance due based on the default in making the $1,529 monthly payments. But Washington Federal's letter of July 1, 1987, plainly stated that failure to pay $4,629.52 within 30 days would give Washington Federal the right to declare the entire loan immediately payable. This was all the deed of trust required. See Deed of Trust paragraph 18. There was no right to notice that Washington Federal had determined to declare the entire loan immediately payable.

Count III alleges that the increase in the mortgage payment to $1,529 per month violated the parties' contract. In light of the right of Washington Federal to demand payment of the taxes it advanced, this contention is meritless. The plaintiff argued in his Supplemental Memorandum filed September 23, 1988, that establishing an escrow did not amount to a demand for full payment. But demand for full payment was made by the notice of July 1, 1987. All the letter of April 24, 1987, did was to give Mr. and Mrs. Flowers some additional time to pay off the amount of taxes they had allowed to fall into arrears.

Count IV alleges that the conduct of Washington Federal was unconscionable. This count must fail: Washington Federal merely acted to collect taxes it advanced and for which Mr. Flowers had responsibility.

Count V alleges that the automatic stay of 11 U.S.C. Section 362(a) was violated because the defendants knew a bankruptcy case was in the process of being filed. But none had been filed when the sale was concluded and hence no automatic stay was in effect.

Count VI alleges that the auction sale was delayed by 20 minutes, causing potential bidders to leave the auction and resulting in inadequate bidding on the property. But the uncontroverted affidavits establish that no one left the auction; the property was sold close to the value scheduled by the Debtor's papers in the bankruptcy case.

## B. COUNT VII

In Count VII the plaintiff alleges that the post-petition conveyance of title to the foreclosure purchaser was a willful violation of the automatic stay of 11 U.S.C. Section 362(a), even though the auction sale had been completed prior to the plaintiff's filing for relief under the Bankruptcy Code. Under D.C.Code Section 45–715.1 (1981 ed.), the debtor's right to redeem the property to avoid a foreclosure sale terminates five days before the sale. Once the foreclosure sale is held, the parties' rights are altered. Thus, when the foreclosure sale in this case was concluded, this gave effect to the failure timely to redeem and foreclosed any right of redemption. In place of his former rights, the plaintiff was faced with the rights of a successful foreclosure sale bidder, holding an enforceable contract to purchase the property. The plaintiff's altered rights meant that no cure of the deed of trust debt was possible under 11 U.S.C. Section 1322(b)(5) when he belatedly filed his bankruptcy petition. Section 1322(b)(5) is directed at a cure of a default in the contractual relationship between the Debtor and the noteholder. *Matter of Roach*, 824 F.2d 1370, 1378 (3rd Cir.1987). Congress gave no indication that the rights of a purchaser at a foreclosure sale were within the aim of Section 1322(b)(5). That purchaser's rights are part of a wholly new contract arising once the gavel falls at the foreclosure sale. Section 1322(b)(5) can not apply to alter them. *In re Brown*, 75 B.R. 1009, 1012 (Bankr.E.D.Pa.1987); *In re Wallace*, 31 B.R. 64 (Bankr.D.Md.1983).

There may, nevertheless, have been technical violations of the automatic stay provisions by the defendants. *Compare Wallace*, 31 B.R. at 65–67, *with In re Upham*, 48 B.R. 695 (Bankr.W.D.N.Y.1985) and *In re Cole*, 88 B.R. 763, 18 B.C.D. 46 (Bankr.E.D.Va.1988). However, such violations could not be "willful," proof of which is essential to recover damages under 11 U.S.C. Section 362(h) for violation of the automatic stay. This is because the issue has never been decided in this district and the automatic stay, 11 U.S.C. Section 362(a), is otherwise unclear and ambiguous regarding whether the subject conduct is barred by the stay.

In deciding whether their acts violated the automatic stay, the defendants were confronted with multiple questions, none of which had a clear answer.

First, what does state law provide concerning the rights a debtor has after a foreclosure sale but before either payment by the successful bidder or the granting and recordation of the deed? District of Columbia law is scant on this point and has not been adequately briefed by the parties. *Legal* title apparently does not pass until the trustees under the deed of trust convey title to the purchaser. *Nat'l. Life Ins. Co. v. Silverman*, 454 F.2d 899, 913 n. 29 (D.C. Cir.1971). But the debtor, no longer having an equity of redemption, has no right to set aside a valid sale and his future *equitable* rights in the property as to a valid sale are thus limited. Cf. *In re Butchman*, 4 B.R. 379, 380–81 (S.D.N.Y.1980) (concluding that debtor no longer had property interest because equity of redemption had expired); *In re Upham*, 48 B.R. at 695 (no violation of stay); *In re Cole*, 88 B.R. at 764–67, 18 B.C.D. at 47–49. The debtor has the right to insist that the trustees be faithful to their trust and enforce any favorable sale if in the best interests of the debtor and noteholder as beneficiaries of the trust. *Sheridan v. Perpetual Bldg. Ass'n*, 299 F.2d 463 (D.C.Cir.1962). The debtor also has the right to look to any surplus proceeds remaining after the satisfaction of the lien secured by the deed of trust. *Paroni v. Quick*, 211 A.2d 765, 768 (D.C.1965). The debtor enjoys a right of possession as a tenant at will once title is conveyed to the purchaser and may be ousted of possession by an ejectment suit only after 30–days notice. D.C.Code Ann. Sections 45–222, 45–1403, 45–1410 (1981). *Nat'l. Life Ins. Co. v. Silverman*, 454 F.2d at 913 n. 29; *Thompson v. Mazo*, 245 A.2d 122 (D.C.1968). Prior to conveyance of title to the purchaser, however, the debtor apparently owns the right to enjoyment of the property, including the right to rents, *Hyde v. Brandler*, 118 A.2d 398 (D.C.1955) (dictum), unless the property has first been

8

subjected to a receivership, *Totten v. Harlowe*, 90 F.2d 377 (D.C.Cir.1937). Finally, the debtor is entitled to all rights in the property, subject to the lien of the deed of trust, in the event the purchaser fails to pay the purchase price and the trustee elects not to sue for specific performance. *In re Leonard*, 63 B.R. 261 (Bankr.D.D.C. 1986).

Second, as a matter of Federal law, do those state rights constitute "property" under 11 U.S.C. Section 362(a)(3)? The debtor's new bundle of rights after a foreclosure sale are plainly a "property" right within the meaning of Section 362(a)(3). But the granting of a deed to the successful bidder and the recording of that deed arguably are not acts to obtain possession of property of the estate because the debtor's altered rights were by definition subject to the rights of the purchaser to obtain a conveyance of title under District of Columbia law.

Third, does the trustee's act of accepting payment constitute an act to collect the noteholder's pre-petition claim in violation of 11 U.S.C. Section 362(a)(6)? Arguably, it does not because the successful bidder is merely enforcing *his* right to purchase the property, an act not proscribed by the automatic stay; and it may be contended that the trustee cannot refuse payment without breaching the contract.

Fourth, does the trustee's act of granting a deed violate Section 362(a)(6)? It could be argued that this too is not an act to collect but merely an act to honor the successful bidder's right to title.

■■■ Despite the arguments to the contrary, in the Court's view, the Debtor retains a shadow of title and the granting of the deed interferes with that title and constitutes a step, albeit minor and perfunctory, in the completion of the collection process. Although the purchaser is not barred from depositing payment, the trustee is barred by the automatic stay from granting a deed. *In re Wallace*, 31 B.R. at

65. The trustee need only apply to the Court to obtain relief from the automatic stay to grant the successful bidder a deed. Absent extraordinary circumstances, cause would exist to permit the granting of a deed.[3] *In re Brown*, 75 B.R. at 1012; *In re Wallace*, 31 B.R. at 65–67.

But no decision previously addressed these questions in this district, and the answers thereto were not clear and unambiguous. In the case of a motion for contempt, an injunction must provide specific, clear and unambiguous notice of the conduct which would be considered a violation in order for contempt to be present. *Terminal R.R. Ass'n v. United States*, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150 (1924). This is particularly true when the injunction's applicability turns on uncertain questions of state property law. *In re Rubin*, 378 F.2d 104 (3rd Cir.1967). Although a debtor's property rights are generally controlled by state law, the fact that such differing results have been reached on the questions now before this Court, in jurisdictions having seemingly similar state laws, would dictate that no contempt be found here. *United States v. Norton*, 717 F.2d 767, 774 (3rd Cir.1983) (any ambiguity in the law should be resolved in favor of the party charged with contempt). By the same token, an act cannot be in *willful* violation of a statute if there was no plain notice of its meaning. Accordingly, damages under Section 362(h) are not appropriate.

CONCLUSION

■■■ Because the sale was a valid foreclosure sale, no grounds exist to set the sale aside. Besides seeking to set aside the sale, no relief other than damages has been sought by the plaintiff. Summary judgment is thus appropriate.

The defendants seek attorneys fees under Bankruptcy Rule 9011. Only Counts V and VI would possibly violate Rule 9011. Count VII clearly does not warrant sanc-

**3.** Congress might have excepted from the reach of the automatic stay the perfunctory act of granting a deed to the successful bidder at a pre-petition foreclosure sale, but it chose not to

do so. Instead Congress chose to accord the debtor an automatic stay freezing the status quo until the court has an opportunity to decide whether cause exists to undo the stay.

tions. Although Counts I through IV border on the ridiculous, they are not so without foundation as to warrant sanctions. Thus, if the defendants request a hearing on sanctions within eleven (11) days, a hearing will be held to determine whether the plaintiff or his attorneys can justify their conduct as to Counts V and VI and, if not, what appropriate sanctions should be imposed.

An appropriate order will be entered.