**In re Roberta T. COOPER, Debtor.**

**No. 01–02283.**

United States Bankruptcy Court,
District of Columbia.

Feb. 5, 2002.

---

Aaron D. Weinrauch, Baltimore, MD, for debtor.

Jeffrey B. Fisher, Fisher Law Group, Upper Marlboro, MD, for creditors.

*DECISION RE FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO DETERMINE THAT NO STAY WAS IN EFFECT AT THE TIME OF THE FORECLOSURE SALE RESPECTING 1622 5TH STREET, N.W., UNIT A, WASHINGTON, D.C. 20001, OR, ALTERNATIVELY, TO ANNUL STAY*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The court will deny the motion filed by the Federal National Mortgage Association ("FNMA") that regards the debtor's residence ("the Property") and that seeks:

(1) a determination that the automatic stay imposed by 11 U.S.C. § 362(a) did not apply to the postpetition resale of the Property by the trustees under a deed of trust, made at the risk of the defaulting purchaser under the trustee's prepetition foreclosure sale; and

(2) in the alternative, an annulment of the automatic stay if the automatic stay barred the resale.

For reasons discussed below, upon a default in the purchase of a debtor's real property, located in the District of Columbia, pursuant to a nonjudicial sale under a deed of trust, and the election of the trustees under the deed of trust to pursue a resale of the real property, the equitable title is deemed to remain fully in the debtor. Accordingly, the automatic stay of § 362(a)(4) applied to the postpetition resale here. Moreover, no grounds exist to annul the stay.

## I

At least until a prepetition foreclosure sale held last year, the debtor Cooper held equitable title to the Property subject to a deed of trust securing repayment of a promissory note held by FNMA. The deed of trust gave the trustees a power of sale in the instance of a default in the terms of the deed of trust.

■ Due to a default in the terms of the deed of trust, FNMA caused the trustees to sell the Property under that power, and their auctioneer declared Phoenix Holding Inc. ("Phoenix") the successful bidder at the prepetition foreclosure sale.[1]

Phoenix, however, failed to settle on its purchase in accordance with the terms of sale. As a result, the substitute trustees elected to notice a resale of the Property at Phoenix's risk and expense. One minute before the auctioneer conducted that resale, the debtor filed her bankruptcy petition commencing this case under Chapter 13 of the Bankruptcy Code (11 U.S.C.). The trustees' auctioneer (perhaps unaware of the bankruptcy filing) sold the Property to 1408 Florida LLC, for a lesser sum.[2]

## II

■ FNMA asserts that upon the fall of the hammer at the conclusion of bidding at the first foreclosure sale, the debtor was divested of her equity of redemption, and thus had no interest in the Property when

---

1. Phoenix's successful bid of $119,700 was made by its agent, Rodney Byrd. The court takes judicial notice that a Rodney Byrd has been the subject of scrutiny by the United States Trustee regarding alleged misconduct as a petition preparer. FNMA has not alleged that there was any collaboration between the debtor and Byrd.

2. Vincent Abell, as agent for 1408 Florida LLC, made a successful bid of $78,000.

she filed her bankruptcy case, citing *In re Flowers*, 94 B.R. 3 (Bankr.D.D.C.1988). FNMA reads too much into *Flowers*. There, following a foreclosure sale, but before the purchaser had performed by paying the purchase price, the debtor Flowers filed his bankruptcy case. As against "the rights of a successful foreclosure sale bidder, holding an enforceable contract to purchase the property," the court held, Flowers no longer had a right of redemption under District of Columbia law and no right to cure under 11 U.S.C. § 1322(b)(5). *Flowers*, 94 B.R. at 7. The court did not hold that the debtor no longer held any title to the property.

Indeed, the court held that the debtor still retained a "shadow of title," *Flowers*, 94 B.R. at 8, such that the trustee under the deed of trust violated the automatic stay by granting the successful bidder a trustee's deed postpetition. In reaching that conclusion, the court made a statement (not acknowledged by FNMA's motion papers in this case) that:

> ... the debtor is entitled to all rights in the property, subject to the lien of the deed of trust, in the event the purchaser fails to pay the purchase price and the trustee elects not to sue for specific performance. *In re Leonard*, 63 B.R. 261 (Bankr.D.D.C.1986).

*Id.* The court would have thought that FNMA would not have filed its motion in the face of the holding of *Leonard*, and the

court's favorable recitation of that holding in *Flowers*.

However, citing Maryland law, FNMA asserts that a resale upon a default in a foreclosure sale is held not only at the risk of but also for the benefit of the defaulting purchaser. *See Aukam v. Zantzinger*, 94 Md. 421, 51 A. 93, 95 (1902). Therefore, FNMA contends, the debtor had no interest in the Property in effect at the time of the resale such that the automatic stay would apply to the resale.[3]

The court concludes that *Leonard* correctly states District of Columbia law, and that *Aukam* is inapplicable as involving a court-ratified sale under Maryland court rules expressly calling for a different result.

## III

The parties have addressed the issues in the context of 11 U.S.C. § 362(a)(4) which prohibits any act to enforce a lien against property of the estate.[4] In deciding whether § 362(a)(4) applied to the resale, the court must determine whether the debtor retained an equitable interest in the Property upon Phoenix's default in paying the purchase price required of it as successful bidder at the prepetition foreclosure sale (and upon the trustees' election not to pursue specific performance) despite the holding in *Aukam*.

---

3. In the alternative, FNMA implicitly contends that even if the debtor retained a "shadow of title" making the automatic stay applicable, cause exists to permit the automatic stay to be annulled because the resale was conducted in good faith and because no harm would have fallen upon the debtor: her "shadow of title" would not suffice to permit her to cure the mortgage arrears under Chapter 13 of the Bankruptcy Code. *Flowers*, 94 B.R. at 7–8; *see also In re Bobo*, 246 B.R. 453, 456 (Bankr.D.D.C.2000). However, unlike this case, *Flowers* and *Bobo* involved foreclosure sale purchasers who stood ready to perform, and the stay relief obtained was to permit completion of the sales to those nondefaulting purchasers.

4. Because the court concludes that § 362(a)(4) barred the resale, the court need not decide whether § 362(a)(6) barred the resale as an act "to collect ... a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code (11 U.S.C.)]."

### A. The Rule in Maryland, a Ratification Jurisdiction, Regarding Defaulting Purchasers at Foreclosure Sales

The rule in Maryland (as embodied in court rules) is that a resale of foreclosed property, after the original purchaser defaults on an earlier foreclosure sale ratified by the court, is at the risk of, and also for the profit of, that defaulting purchaser. "The proceedings for a resale, after final ratification, treat the first contract as binding on the original purchaser. The property is resold as the property of the defaulting purchaser, and at his risk. He is therefore entitled to any excess in the proceeds of sale at the resale." *Aukam,* 51 A. at 95 (internal citations omitted). The debtor whose property was foreclosed had no interest in the property when it was resold, and consequently had no standing to object to the sale. *See id.*

■■■■ Foreclosure sales in Maryland are non-judicial sales subject to ratification by a court of equity: in effect they are quasi-judicial sales. In Maryland, legal title does not pass at a foreclosure until ratified by the equity court. *See Plaza Corp. v. Alban Tractor Co., Inc.,* 219 Md. 570, 151 A.2d 170, 174 (1959). "After the foreclosure sale, equity regards the property to be in the hands of the buyer. The sale divests the mortgagor of all rights of redemption remaining at the time of the sale." *Federal Nat'l Mortgage Assoc. v. Taylor,* 1987 WL 26397 at *1 (D.Md.1987). Until the sale is ratified by the court, it is incomplete and the purchaser's title is inchoate and equitable from the day of sale until the final ratification. *See Union Trust Co. v. Biggs,* 153 Md. 50, 137 A. 509, 512 (1927). Because ratification retroacts,

the purchaser is regarded by relation-back as the equitable owner from the time of sale, and thus entitled to all the intermediate rents and profits of the sale.[5] *Id.* "Consequently, after a foreclosure sale, both the equity of redemption and equitable ownership are extinguished" for the mortgagor. *Community Dev. Admin. v. De Souza,* 135 B.R. 793, 796 (Bankr.D.Md. 1992). Additionally, once the property is sold at a foreclosure sale, the debtor only holds the right "to object at the ratification proceedings to irregularities in the conduct of the sale or validity of the mortgage," since the purchaser holds the equitable title. *In re Denny,* 242 B.R. 593, 597 (Bankr.D.Md.1999).

### B. The Rules of the District of Columbia and Virginia, Non–Ratification Jurisdictions, Regarding Defaulting Purchasers at Foreclosure Sales

■■■■ Unlike Maryland, the District of Columbia and Virginia do not require ratification of foreclosure sales. (The court includes Virginia in the discussion because the Virginia Court of Appeals has explicitly addressed the issue of the rights of a defaulting foreclosure sale purchaser upon a resale whereas the District of Columbia Court of Appeals has not.) These two jurisdictions allow the use of the deed of trust, which gives the trustee a power of sale to foreclose upon default of the terms in the deed of trust. With such a tool, foreclosure and the passing of title depend upon a valid sale rather than a court of equity's determination that a sale is final. If a purchaser at a foreclosure sale fails or refuses to comply with its bid, the trustee has the power to resell the property.

---

**5.** Under District of Columbia law, however, where the mortgagor is permitted to remain in possession of the property, he is "entitled to the rents even after default. This rule applies only to those rents which have ac-
crued prior to the foreclosure and sale of the mortgaged premises." *Hyde v. Brandler,* 118 A.2d 398, 400 (D.C.App.1955) (*citing Totten v. Harlowe,* 90 F.2d 377 (D.C.Cir.1937)).

### 1. *Virginia Case Law*

The Supreme Court of Virginia has explicitly explored the consequences of a defaulted foreclosure sale, stating that, "if the purchaser fails or refuses to comply with his bid, the trustee shall have the authority, if he acts with reasonable promptness after the breach, to resell the property, after due notice to the purchaser, at the risk of the purchaser." *Definite Contract Bldg. & Loan Ass'n v. Tumin*, 158 Va. 771, 164 S.E. 562, 568 (1932); *see also Yaffe v. Heritage Savs. & Loan Ass'n*, 235 Va. 577, 369 S.E.2d 404, 405 (1988) (utilizing the *Definite Contract* decision to explain the trustee's power of resale). Although the argument was made in *Definite Contract* that a resale is "for [the defaulting purchaser's] account and at his risk," 164 S.E. at 567, the court carefully refrained from holding that the resale was for the defaulting purchaser's account.

FNMA may not take solace in the statement in *Definite Contract*, 164 S.E. at 568, that a sale under a deed of trust "bears a close analogy to a sale of land made by the commissioner of a court of chancery in a suit brought to subject the land to satisfy a vendor's or judgment lien thereon." First, the court did not address whether court rules required a resale by a commissioner in chancery to be both for the benefit of and at the risk of the purchaser who defaulted on the earlier commissioner's sale. Second, the court analogized to a resale by a commissioner in chancery for purposes of deciding (i) whether a resale was necessarily in the contemplation of the parties, and, if so, (ii) whether, at the defaulting vendee's risk, a resale conclu-

sively fixes the amount of damages. It did not do so for the purpose of addressing an issue not before it: whether a deed of trust sale is to be treated like a court-ratified foreclosure sale in Maryland in which the trustees may treat title as passing to the original purchaser subject to resale, if she defaults, at her risk **or profit**.

 Indeed, the court emphasized that the trustee's power was not to retain the property on default and to sue for damages, but only to resell the property by "a forced sale at public auction fairly made in accordance with the provisions of the deed of trust." *Definite Contract*, 164 S.E. at 568. Thus, the resale, as provided by the deed of trust, is of the debtor's interest in the property, title never having passed to the defaulting vendee because the contract of sale was not completed due to the default. As an implied condition of the original sale, a resale, promptly and fairly made with due notice to the defaulting vendee, "conclusively fixes the damages of the vendee's breach of the contract, unless it be shown that the sale was not fairly made, or that it was made upon less advantageous terms or under conditions substantially less favorable than the original sale . . . ." *Id.*

### 2. *District of Columbia Case Law*

Decisions of the District of Columbia Court of Appeals, and of the United States Court of Appeals for the D.C. Circuit in its role of authoritative arbiter of District of Columbia law in decisions rendered prior to February 1, 1971,[6] have not directly

---

**6.** *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("decisions of the United States Court of Appeals rendered prior to February 1, 1971, . . . like the decisions of this court, constitute the case law of the District of Columbia") (interpreting the District of Columbia Court Reorganization Act of 1970, Title I

of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970), codified at D.C.Code Ann. § 11–101 et seq. (1995)); *see also* § 718 of the D.C. Self–Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973). This so-called

addressed the consequences of a default by a foreclosure sale purchaser. However, they have characterized foreclosure sales in a manner that compels the same result, as in the case of Virginia realty, with respect to District of Columbia nonjudicial foreclosure sales.

■ First, in the District of Columbia, failure of a purchaser at a foreclosure sale to perform means that the sale has never been concluded. The acceptance of a purchaser's bid at a foreclosure sale results in a contract for purchase, not a court-ratified sale. *See Basiliko v. Pargo Corp.*, 532 A.2d 1346 (D.C.1987) (foreclosure sale, albeit unauthorized, resulted in a contract of sale: "we can discern no basis for distinguishing this breach of contract from that by any other vendor of real property who fails to convey for lack of good title"). When the purchaser neglects to perform, the purchaser is not entitled to the property. *See Stuart v. Am. Sec. Bank*, 494 A.2d 1333, 1339 (D.C.1985) (based on purchaser's refusal to go through with the sale on the stated terms, "a contract for the sale of the property was not concluded, and hence he is not entitled to an order directing conveyance of the property.").

■ Second, breach by the purchaser of an executory contract to purchase real property gives rise to three distinct and alternative remedies: specific performance, recision (with a forfeiture of any agreed deposit to be paid to the vendor upon recision), or recovery of damages. *Sheffield v. Paul T. Stone, Inc.*, 98 F.2d 250 (D.C.Cir.1938) ("When plaintiffs' breach occurred two alternative remedies, apart from a suit for specific performance, were open to defendants: (1) to 'forfeit' the deposit, i.e. to retain it as liquidated damages and call the deal off; (2) to establish the actual damages by selling the house to third persons, and hold plaintiffs for the damages so established."). *Accord, Rowe v. Shehyn*, 192 F.Supp. 428 (D.D.C. 1961) (because vendor had elected to pursue damages remedy, and on resale realized more than on the original sale, the vendor was not entitled to recover from vendee's deposit). Neither of these decisions suggests that the purchaser who was at fault for defaulting should nevertheless have the windfall of a profit realized by the vendor on resale, and thereby these decisions imply that the defaulting purchaser has no such right.

■ Third, the general rule is that a defaulting purchaser is not entitled to recover the profit a vendor realizes on a resale. *See, e.g.,* D.C.Code § 28:2–706(6) (rule applicable to chattels); *Texpor Traders, Inc. v. Trust Co. Bank*, 720 F.Supp. 1100, 1113 (S.D.N.Y.1989) (applying U.C.C. § 2–706(6)); *Bridgford v. Crocker*, 60 N.Y. 627 (N.Y.1875) (applying pre-Code law applicable to chattels); *Andrew Crispo Gallery, Inc. v. Maroney*, 187 A.D.2d 251, 589 N.Y.S.2d 445, 446 (N.Y.App.Div.1992) (citing U.C.C. § 2–706(6)). There is no reason to believe that the District of Columbia would not follow that same rule in the context of nonjudicial foreclosure sales of real property.

■ Accordingly, equitable title to District of Columbia real property remains in the mortgagor upon a default in the purchase at a foreclosure sale if the trustees under the deed of trust elect not to pursue specific performance. As Judge Bason observed in *Leonard*, 63 B.R. at 262:

> it would be ... impermissible to hold that equitable title remains with the defaulting purchaser. If that were so, the

---

Home Rule Act is reprinted in D.C.Code Ann., vol. 1, History of the D.C.Code (1995) at 173 *et seq.* and, in pertinent part with respect to

the District of Columbia's judicial power, as an Appendix to D.C.Code Ann. title 11.

defaulting purchaser would appear to be the one entitled to any excess proceeds upon the resale ... contrary to the terms of the deed of trust and contrary to the common understanding of what happens in this type of situation.

In the District of Columbia, as in Virginia, the power to resell is necessarily limited to a resale in accordance with the deed of trust, and, in contrast to Maryland, there is no intervention in the original sale by a court. The original sale does not become a court-ratified sale that may result in a resale prescribed by court rule to be both for the profit and at the risk of the defaulting purchaser.

 Upon Phoenix's continuing default in the purchase terms, the equitable title remained with the debtor.[7] That interest in the Property became property of the estate, and § 362(a)(4) acted to bar the resale.

### IV

 FNMA has failed to articulate grounds justifying annulment of the automatic stay. It alleges that it proceeded in good faith. Even if it was unaware of the debtor's bankruptcy case when the resale was conducted, and even if it believed that the Property was no longer the debtor's, those are insufficient reasons to annul the stay. In *Flowers*, the purchaser stood ready to perform, and the debtor held merely a "shadow of title" (because the debtor's rights included no right of redemption that could be invoked to override the right of the non-defaulting purchaser

to perform and acquire legal and equitable title). Here, Phoenix defaulted and did not stand ready to perform, thus necessitating a resale, with the debtor retaining equitable title to the Property being resold. The debtor was entitled to redeem the Property from being resold at foreclosure, and is entitled to seek to employ the tools of Chapter 13 of the Bankruptcy Code to attempt to cure her arrears under the deed of trust, *see* 11 U.S.C. § 1322(b)(5), and thereby to prevent the loss of her residence through foreclosure.

### V

For the foregoing reasons, FNMA's motion shall be denied. An order follows.

---

7. The court does not decide whether, even after the property was noticed for resale, Phoenix could have acquired title to the property by curing its default and paying any added costs the trustees had incurred. Phoenix remains in continuing default, and there is no suggestion it has the ability or desire to cure its default, and FNMA does not seek relief from the stay to permit Phoenix to acquire title in that fashion. Moreover, the re-

sale notice revested the debtor with the right to redeem the property from foreclosure. At the very least, Cooper was entitled to redeem the property from resale (and hence from foreclosure under that resale or under the earlier defaulted sale) if she acted before Phoenix exercised its right, if any it had, to cure its default and pay for the trustees' added costs.