WILLIAM A. BRYDON *vs.* MALCOLM CAMPBELL and
SAMUEL L. GOVERNEUR, JR.
MALCOLM CAMPBELL and SAMUEL L. GOVERNEUR, JR.
*vs.* WILLIAM A. BRYDON.

*Effect under sec. 19, of Art. 24 of the Code, of Recording a Deed
properly acknowledged, but not Attested, as required by the Act
of 1856, ch. 154, sec. 25, and Code, Art. 24, sec. 10 – Construc-
tive notice by a Record, limited to what that Record discloses.*

A deed of four-tenths of an equitable interest in land, properly acknowledged
but not attested, was made by S. L. G., Sen'r, on the 14th of November,
1856, to M. C., in trust for S. L. G., Jun'r, but was not recorded until May
31st, 1864. Three days before it was recorded (May 28th, 1864,) the gran-
tor contracted to sell his equitable interest in the whole land to W. A. B.,
who went into possession, paid part of the purchase money, and received a
deed of the grantor's equitable interest on the 6th of October, 1864. On the
8th of the same month he gave a mortgage to his grantor to secure the
unpaid purchase money, and on the 10th of November, 1864, he obtained a
deed of the legal title to the land, and then commenced the erection of a
costly dwelling-house upon it. After the completion of the house he was
made aware of the claims of S. L. G., Jun'r, and of his Trustee, M. C.,
under the deed of November, 1856. On a bill then filed by him to have the
cloud on his title removed, and for protection in the payment of the mortgage
debt due from him on the property to whoever might be declared to be entitled
to the same, it was HELD :

1st. That although the deed of the 14th of November, 1856, was not attested
as required by the Act of 1856, ch. 154, sec. 25, yet being properly acknow-
ledged, its subsequent registration rendered it valid under sec. 19 of the Code,
Art. 24, as against the grantor and against purchasers with notice.

2nd. That when recorded it operated as constructive notice in the same manner
as if the attestation had not been wanting.

3rd. But that such constructive notice could only be of what the record dis-
closed ; and as although the deed was for four-tenths of the land, by mistake
in the registration it appeared on the records to be for a *fourteenth*, the con-

structive notice would only affect the land to the extent of one-fourteenth part.

4th That the said deed was valid as against the grantor therein, and the grantees were entitled to assert their claim against him to the extent of his interest in the property conveyed ; and such claim might be enforced directly against the purchase money due from W. A. B., to the extent of four-tenths thereof, with interest, it appearing that said purchase money was the full value of the land at the time of the purchase, and before it was improved by the purchaser.

The Act of 1856, ch. 154, sec. 25, and the Code, Art. 24, sec. 10, require that "Every deed conveying real estate shall be signed and sealed, ('as heretofore,' in the Act of 1856,) ('by the grantor or bargainor,' in the Code,) and attested by at least one witness." In the case of a deed not so attested, it was HELD :

1st. That such a defect, whatever other consequences might result from it, could not be held to avoid the effect of registration.

2nd. That it was the acknowledgment before a competent officer that entitled the paper to go upon the record, and when recorded it operates as constructive notice in the same manner as if the attestation had not been wanting.

CROSS-APPEALS from the Circuit Court for Allegany County, in Equity.

The facts of the case are fully stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Wm. Walsh* and *S. Teackle Wallis,* for Wm. A. Brydon and Mrs. Mary D. Governeur.

*J. H. Gordon,* for Malcolm Campbell and Saml. L. Governeur, Jr.

BARTOL, C. J., delivered the opinion of the Court.

The main questions presented by these appeals are: *First.* Has Governeur, Jr. any interest in the tract of land

in controversy, and if so, to what extent? and *Secondly.*
Is Brydon, the complainant a *bona fide* purchaser of the
property, without notice of said interest?

The tract of land in question known as the "Blooming-
ton property," was sold on the 16th day of January, 1855,
by Thomas Devecmon, trustee, under a decree of the Circuit
Court of Allegany County, and Samuel L. Governeur, Jr.
was reported as the purchaser.    From the subsequent pro-
ceedings it may be inferred, that the property was pur-
chased in pursuance of some agreement between Governeur,
Jr., and Governeur, Sr., the father, the precise terms of
which are not satisfactorily proven.    It appears, however,
from the proof, that the purchase money was paid by
Governeur, Senior.    A short time after the sale by the
trustee, Governeur, Sr. sold one-half of the property to
John H. McBlair, for the sum of five thousand dollars;
and a further interest of one-tenth to William McBlair for
one thousand dollars.    This last was conveyed by deed of
November 1st, 1855.    The sale of the one-tenth to Wm.
McBlair, caused some difficulty between the father and the
son, and led to the execution of the following agreement.

"A misunderstanding having existed respecting the
Bloomington mining property, after explanation, it is
understood and agreed between the undersigned; that one-
half of said Bloomington Mining Co. is to be conveyed to
J. H. McBlair." * * * * * * * * * "That one-tenth of the
said Bloomington Mining Co. is the property of, and to
be conveyed to Wm. McBlair. * * * *    That in respect
to the remaining four-tenths of said property, they are to
be conveyed to M. Campbell, subject to the following un-
derstanding :

"Whereas, Samuel L. Governeur has heretofore ad-
vanced to his son, S. L. G., Junior, the amount of $——,
and is desirous to further advance to him, such other sum,
say $8016.00, in order to make up the sum of $10,000.00,
the said S. L. Governeur, Jr. is to have an interest and a

lien on the said 4-10ths in the hands of said Campbell, to the amount of the said $8016.00, payable to him in annual payments, in seven successive years, from this date, with interest, and the said Campbell agrees to hold the said 4-10ths to secure to the said S. L. G., Jr. the faithful payment of that sum as so agreed, and that payment made to convey the same to said S. L. Governeur, or to his order."

This agreement was signed by Governeur, Sr. and Governeur, Jr., on the 31st day of October, 1855, and witnessed by the late Judge Lee.

On the same day of the execution of this agreement, Governeur, Sr. and wife, conveyed to M. Campbell 4-10ths of the Bloomington property, in trust for Governeur, Jr., to secure the payment of the said sum of $8016.00. On the 11th of February, 1856, Governeur, Jr. and wife, by deed, in consideration of the sum of one dollar, assigned to Governeur, Sr. all the rights and privileges acquired by him as the highest bidder at the sale by Devecmon, trustee; and for the further sum of *five dollars*, assigned and transferred to Samuel L. Governeur, Sr. and wife, all their right and title to the tract of land now in controversy.

On the 14th of November, 1856, Governeur, Sr. and wife, by deed, in consideration of one dollar, conveyed to M. Campbell, four-tenths of the said tract of land, and also all other real estate in Allegany County belonging to Governeur, Sr., in trust for his son S. L. Governeur, Jr. This deed was acknowledged before a Justice of the Peace, but was not attested, as required by the Act of 1856, ch. 154, sec. 25, then in force; nor was it recorded until the 31st day of May, 1864. Seven years and six months after its date, and three days after Governeur, Senr. had contracted to sell to Brydon. Under this deed, Campbell the trustee, and Governeur, Jr. now claim title.

But to pursue the statement of the facts of the case, in their chronological order.

On the 22nd of November, 1856, eight days after the deed of trust to Campbell, Governeur, Senr. filed his petition in the Equity case, alleging that prior to the first day of November, 1855, he had purchased from Governeur, Jr., all his right, title and interest, and praying that an order might be passed directing Devecmon, the trustee, to convey to him *nine*-tenths of the same, and one-tenth to his grantee, William McBlair; and on the 24th day of the same month an order was passed by the Circuit Court as prayed in the petition.

On the 26th day of March, 1859, the rights and interests of the McBlairs, which had been seized under execution, were sold by the sheriff to Governeur, Senr. On the 28th day of May, 1864, Governeur, Senr. sold to Brydon all his right, title and interest in the property, "whatever he has or his son, S. L. Governeur, Jr. has," "believed to be the full right and title," for $4600, of which $1000 was to be paid on the delivery of the deed, and the balance in one, two and three years, with interest, to be secured by mortgage. Brydon went into possession, and on the 6th day of October, 1864, a deed was executed to him by Governeur, Senr.; one thousand dollars of the purchase money was paid, and a mortgage executed on the 8th day of October, 1864, to secure the balance according to their contract. On the 10th day of November, a deed was made by Devecmon, the trustee, conveying the property to *Brydon*, in compliance with an order of the Circuit Court passed upon Brydon's petition. And thereupon Brydon went on to build and improve, and early in 1865, had completed a dwelling house upon the property, costing $12,000 to $15,000.

Up to that time, according to the statement in the bill, and the testimony of Brydon, he had no knowledge of any claim on the part of Governeur, Jr., or his trustee, Campbell under the deed of the 14th of November, 1856, and was ignorant of the existence of such deed. His bill was

. filed in June, 1865, as he alleges, soon after he discovered that claims to the property were set up by Campbell and Governeur, Jr., praying to have the cloud thereby cast upon his title removed, and to be protected in the payment of the mortgage debt due from him on the property, to whoever may be declared to be entitled to the same.

Now, as we have said, the first question to be considered, is what interest did Campbell, trustee, or Governeur, Jr. acquire under the deed of the 14th of November, 1856? At that time Governeur, Senr., their grantor, held an equitable estate in the property of only *four-tenths;* the deed by its terms purports to convey only *four-tenths;* consequently, there is no possible ground to support the claim made in this case by the grantees, to the whole of the property. Is the deed valid and effectual to convey the *four-tenths* part?

By the Act of 1856, ch. 154, sec. 25, which was in force when the deed was made, it is enacted that "every deed conveying real estate, shall be signed and sealed as heretofore and attested by at least one witness." The deed is not so attested. Again by sec. 96 of the same Act, every deed was required to be recorded, *within six months from the date of its acknowledgment.* And by sec. 102, it was declared that "no deed of real property shall be valid, for the purpose of passing title, either between the parties thereto, or third persons, unless acknowledged and *recorded* as herein directed." It is unnecessary to consider the effect of this last provision; because by the Code, Art. 24, sec. 19, it was provided, that deeds duly acknowledged may be recorded after the lapse of six months, and when recorded, are made valid as against the grantor, his heirs, or executors, and against purchasers, *with notice of such deeds;* and this section was made applicable to deeds "*heretofore executed and acknowledged according to law, whether before or after the adoption of the Code.*" Deeds of mortgage are excepted from its operation; but in our judg-

Brydon *vs.* Campbell and Governeur.

ment, the deed of November 14th, 1856, is an absolute conveyance, and not in the nature of a mortgage, and therefore does not come within this exception.    That it is an absolute deed appears both from its terms, and from the correspondence between the parties.    By sec. 10, Art. 24 of the Code, the attestation of one witness is required. But neither the Act of 1856, nor the Code, in terms declared the deed to be invalid, without such attestation; and we conclude that by force of the 19*th section*, above quoted, the deed now under consideration is valid, as against the grantor; and against purchasers with notice.

The next question to be considered is whether Brydon had notice of the deed; or is he a *bona fide* purchaser without notice of the title or interest of Governeur, Jr., in the property?    And first as to the alleged constructive notice from the registration of the deed; the deed was actually recorded on the 31st day of May 1864; three days after the contract of purchase by Brydon from Governeur, Sen. But some months before he obtained his deeds, and began his improvements.    The counsel for Brydon have argued that the deed, being without the required attestation was defectively executed, and therefore not entitled to be recorded, and for that reason, its registration would not operate as constructive notice.    1 *Md.*, 403; 5 *Md.*, 81; 16 *Md.*, 207.    Those cases related to deeds defectively acknowledged, or without any acknowledgment.    Here the deed was duly acknowledged, the alleged defect consists in the want of attestation by a witness; such a defect, whatever other consequence may result from it, cannot be held to avoid the effect of registration.    It is the acknowledgment before a competent officer, that entitled the paper to go upon the record; and when recorded it operates, we think, as constructive notice, in the same manner as if the attestation had not been wanting.

But it is very clear that such notice can only be of what the record disclosed.    It is shown by the proof, that as it

appeared upon the register, the deed conveyed " *the un-divided fourteenth* part of the land. This it seems resulted from a mistake of the clerk, which was corrected long afterwards, so as to read *four tenths*, according to the words of the original deed; this correction was made as late as August 7th, 1865, after the commencement of this suit. So far therefore as Brydon is affected with constructive notice from the land records, it can only be, of an interest in Governeur, Jr., to the extent of *one fourteenth part*. But it is contended that he had actual notice of the equitable interest of Governeur, Jr., to the extent of *four tenths*; or if not actual notice, that he had such knowledge of Governeur, Jr's., adverse claim, as to put him on inquiry; and that he is thus chargeable with actual knowledge, and deprived of the protection of the Court, as a *bona fide* purchaser without notice. After a careful consideration of the whole case, a majority of the Court are of opinion that this proposition is not supported by the proof. On that question we concur in the conclusion reached by the Judge of the Circuit Court.

There is no evidence that Brydon had any actual knowledge of the deed of the 14th of November, 1856. He states in his bill, which is verified by oath, that his first knowledge of its existence, was recently before the filing of his bill; and in his testimony he swears that his attention was first called to it by Mr. Devecmon, shortly before filing his bill; and that till then he was ignorant of it; and had no knowledge of the adverse claim of Governeur, Jr. This testimony is uncontradicted. The evidence shows that Governeur, Jr., was aware that he was putting valuable and costly improvements on the land, and gave him no notice of his claim; and two of the carpenters, who were at work upon the building, testify that Governeur, Jr., was there when the house was nearly completed, and said to them, "it is a fine house, that it was his, and he would live in it," but did not inform Brydon

that he had any claim of title. This course of proceeding on the part of Governeur, Jr., was not consistent with good faith, or fair dealing. Courts of Equity hold a party estopped by his silence and acquiescence under such circumstances.

The evidence principally relied on, to prove knowledge, or notice to Brydon, are the letters written by him to Governeur, Jr., prior to his contract of purchase, and shortly after making the contract. The letters are dated May 3rd, June 3rd, and August 25th, 1864. In them he speaks of his, Governeur's, having some interest in 4-10ths of the land; and proposes to purchase it. Now, Brydon's explanation of these letters, and the circumstances under which they were written, in his testimony, is perfectly plain and satisfactory. At that time he was aware of the first deed of trust or mortgage from Governeur, Sr., to Campbell, dated Oct. 31st, 1855; and he testifies that it was the interest of Governeur, Jr., under *that* deed, to which he referred in his letters. It is evident that they could not have referred to the deed of Nov. 14th, 1856— then on record; for *that*, as it there appeared, was for *one-fourteenth part*; whereas, in the letters, he speaks of *four-tenths*, which was the interest conveyed by the deed of Oct. 31st, 1855.

After writing those letters, and before his purchase was completed, any part of the purchase money paid, or his improvements begun, he saw exhibited in the Chancery case, with the petition filed by Governeur, Sr., the deed of Governeur, Jr., and wife to Governeur, Sr., of Feb. 11th, 1856, conveying to Governeur, Sr., all their interest and estate in the property. He then went on innocently and in good faith to complete his purchase; took the title from Governeur, Sr., and Devecmon, the trustee, in good faith, and went on to improve the property, relying, as he well might do, upon having a good title, and ignorant of any claim on the part of Governeur, Jr., under the deed of

Nov. 14, 1856, of the existence of which he was ignorant. Under these circumstances he is entitled as a *bona fide* purchaser, to protection against the adverse claim now set up by Campbell and Governeur, Jr., under the deed of Nov. 14th, 1856, which, as to him, ought to be declared void and of no effect. But that deed being valid, as against Governeur, Senior, and wife; the grantees therein are entitled to assert their claim against Governeur, Senior, and his representatives, to the extent of the interest or share in the property thereby conveyed. This claim may be enforced directly against the purchase money due from Brydon. The proof shows that the price which he agreed to pay for the land was its full value, before the improvements were made. The Circuit Court treating the deed of the 14th of November as in the nature of a mortgage to secure to Governeur, Jr., the payment of $8016.00, the amount mentioned in the original agreement made between the father and son, on the 31st of October, 1855, decreed the payment of the whole balance of the purchase money to be made to Governeur, Junior. In that particular we think the Circuit Court was in error. The mortgage made in pursuance of the agreement, on the same day, was afterwards released, and the property reconveyed to Governeur, Senior, by the deed of Governeur, Junior, and wife, dated the 11th day of Feb'y, 1856.

Afterwards, in lieu of the proposed advance by way of security for a stipulated sum of money as originally contemplated, an absolute deed of conveyance was made of *four-tenths* of the property. Such was the deed of November 14th, 1856, under which Governeur, Jr., now claims; as that conveys only *four-tenths* of the property, it follows that Governeur, Jr., is entitled to receive that proportion only of the whole purchase money of the land, which was $4600, with interest thereon; and the balance of the purchase money and interest, due from Brydon, after deducting the amount or share so payable to Governeur, Jr., is

to be paid to the personal representative of Governeur, Senior; and upon the payment thereof, Brydon will be entitled to have his mortgage released and his promissory notes, which the same was executed to secure, returned to him or cancelled. And in order that a decree may be passed in conformity to this opinion, the decree of the Circuit Court will be reversed in part and affirmed in part, and the cause remanded, each party paying an equal part of the costs of this appeal, except Mrs. Governeur, who is not to be chargeable with any part thereof.

*Affirmed in part and reversed in part,*
*and cause remanded.*

(Decided 9th June, 1874.)