## PLAZA CORPORATION *v.* ALBAN TRACTOR CO., INC.

[No. 23, September Term, 1958.]

572

*Decided November 14, 1958.*

*Motion for modification of opinion and for partial rehearing filed by appellee December 13, 1958.*

*Motion for rehearing granted January 20, 1959.*

*Modified opinion filed April 17, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Lawrence I. Weisman* and *Arnold Fleischmann*, with whom
were *Nyburg, Goldman & Walter* on the brief, for appellant.

*Nathan Patz*, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

After reargument, the original opinion is modified so as to
read as follows:

The decision in this case depends upon the relative priority
of two mortgages—one covering both real estate and chattels
personal, and held by the appellant; the other covering chat-
tels personal, only, and held by the appellee.

On December 26, 1950, John B. Gaither, Jr., Inc. (Gaither)
was incorporated by the filing of articles of incorporation with
the State Tax Commission designating its principal office as
3544 Milford Mill Road, Baltimore County, Maryland, this
being also the address given for the resident agent, John B.
Gaither, Jr., who was president of the corporation. After
the incorporation, a number of amendments were filed with
the State Tax Commission enlarging the general purposes of
the corporation and changing its stock structure, but in no
way affecting the change of the location of its principal office
from Baltimore County to Baltimore City, although it did

establish a business office at 10 West 25th Street in Baltimore City.[1]

On October 20, 1954, Gaither purchased from the appellee, Alban Tractor Co., Inc. (Alban), certain construction equipment, and executed and delivered, unto Alban, a conditional contract of sale in the amount of $203,195.62 covering said equipment. This conditional sales contract was recorded on the same day in Baltimore City, and immediately assigned to the Union Trust Company.

On December 1, 1954, Gaither executed a mortgage to the appellant, Plaza Corporation (Plaza), covering a part of the same personal property mentioned in Alban's conditional sales contract above, additional personal property and certain real estate. This mortgage was forwarded, on the same date, to the Clerk of the Circuit Court for Baltimore County for recording.

On May 6, 1955, Gaither was in default in its payments due under the conditional sales contract, given to Alban and transferred by it to the bank. On that date Alban paid, in full, the amount due to the Union Trust Company under the assignment of the conditional sales contract, sold to Gaither additional equipment for a price of approximately $119,000 and took from Gaither a chattel mortgage on the additional equipment as well as the equipment that had been named in the conditional sales contract, the latter including a substantial part of the same property that had been included in Plaza's chattel mortgage. This mortgage to Alban was recorded on the same day in Baltimore City.

On November 5, 1956, Herbert L. Wynne, the attorney named for the purpose of foreclosure in the Alban mortgage, filed a petition for the sale of the mortgaged chattels in Circuit Court No. 2 of Baltimore City, and, after a decree appointing him trustee to make sale, proceeded to advertise the chattels for sale.

On November 15, 1956, Gaither executed a Deed of Trust

---

1. For the methods of changing the principal office of Maryland corporations, see secs. 8 and 10 of Article 23, (Code 1957).

for the benefit of creditors to Herbert H. Hubbard and Sidney Waldman, trustees.

On November 29, 1956, Mr. Isekoff, the attorney named for the purpose of foreclosure in the Plaza mortgage, notified Wynne that Plaza had filed foreclosure proceedings in Baltimore County on November 27, 1956. The real estate named in the Plaza mortgage was sold and the sale reported to the Court in the Baltimore County proceedings, but the sale was not ratified or confirmed by the court at the time of the trial below, insofar as the record herein discloses.

On December 1, 1956, Wynne, as trustee aforesaid under the Alban chattel mortgage, proceeded to sell the chattels named in the Alban mortgage, these chattels bringing $148,500 (which amount was insufficient to pay Alban in full), consisting of $67,200 for the chattels named in both the Alban and Plaza mortgages and $81,300 for those named only in the Alban mortgage. Plaza filed exceptions to the ratification of the sale by the court in Baltimore City. Pursuant to a stipulation entered into at the trial on May 29, 1957, this sale was ratified, without prejudice to all of the exceptions and contentions of Plaza.

In September, 1957, the chancellor signed a decree in which he dismissed Plaza's exceptions on the ground that Plaza had made no showing of a lien on any of the chattels sold, and, therefore, was without right to urge its exceptions; and directed the trustee, as all parties had agreed thereto, to pay forthwith to Alban the sum of $70,000 and to deposit the balance of the fund in certain institutions, subject to the further order of the court. ·

There was no testimony offered to show that Plaza had actual notice of Alban's conditional sales agreement when it took its chattel mortgage; or that Alban had actual notice of the Plaza mortgage when Alban received its mortgage.

I

It will be noted at the outset that Plaza makes its claim as a senior encumbrancer and filed exceptions to the ratification of the sale made under the Alban mortgage. Ordinarily, the holder of a prior mortgage has no standing in court to file

exceptions to the ratification of a sale made under a junior mortgage; because, generally, such a sale is made subject to the prior mortgage and does not affect the rights of the prior mortgagee. Article 66, sec. 7 (c), Code (1957); 2 Jones, *Chattel Mortgages and Conditional Sales,* sec. 694. However, the stipulation of the parties herein was made before the sale was ratified and transferred the claims of all of the parties to the chattels sold from the chattels to the proceeds of their sale. This, the parties had a right to do and the stipulation effectively placed before the court the respective claims of Alban and Plaza to the proceeds of the sale. *Willard v. Ramsburg,* 22 Md. 206, 215, 216; *In re Sachs,* 30 F. 2d 510, 511 (C. C. A. 4th Cir.). Cf. 2 Jones, *op. cit.,* sec. 779.

## II

We shall next consider the question of the jurisdiction and/or venue of the court in Baltimore City to appoint a trustee and order the sale of the mortgaged property. The appellant claims that the court below (and all other courts) lacked jurisdiction or venue because Alban's chattel mortgage was not recorded in Baltimore County, in accordance with Article 21, secs. 45 and 46 (Code 1957), which requires that a chattel mortgage be recorded in the "county or city" where the mortgagor resides, but was only recorded in Baltimore City. It argues that the provision "at any time after filing the same (the mortgages or certified copies) to be recorded to submit [them] to a court of equity" contained in sec. 6 of Article 66 (Code 1957), prevented the court in Baltimore City from acting under the procedure authorized by said section, without the mortgage having first been filed for record in Baltimore County.

The chattels involved herein were sold under said section 6.[2] It will be noted that this section does not confer special and extraordinary powers of *jurisdiction* upon the equity courts. Foreclosure of mortgages after default has long been

2. One of the appellant's contentions is that the sale was made under section 508 of the Baltimore City Charter, but that section had been repealed. Ch. 12 of the Acts of 1950.

peculiarly within a court of equity's jurisdictional powers; and the above section simply provides an expeditious and economical summary modal procedure for the exercise of an ordinary jurisdiction. *Cockey v. Cole,* 28 Md. 276, 283, 284; *Warehime v. Carroll Co. Build. Assoc.,* 44 Md. 512, 516, 517.

We think the appellant, having consented and stipulated that the court ratify and confirm the sale and that the claims of all the parties to the chattels be transferred to the proceeds of the sale thereof, is in no position to challenge the power of the court below to make the sale. The sale under the decree did not pass the title to the property sold until the sale was ratified and confirmed. Before ratification the transaction was merely an offer to purchase which had not been accepted. The court was the vendor acting through its agent, the trustee, who had been appointed to make the sale. When he reported the offers of the bidders for the property to the court, no contracts of sale had been completed and no title had been transferred to the prospective purchasers. But, when the offers were accepted and the sales to the respective bidders were ratified and confirmed (and the purchase money paid), the contracts of sale became complete and the title to the property sold passed. *Hanover Fire Ins. Co. v. Brown,* 77 Md. 64, 71, 25 A. 989, 27 A. 314; *Talbert v. Seek,* 210 Md. 34, 41, 122 A. 2d 469. The appellant, having consented to the above, cannot now request its disaffirmance.

III

The Chancellor held that Alban's conditional contract of sale from Gaither (although assigned to the Union Trust Company) was duly recorded and long antedated Plaza's mortgage; and, therefore, at the time Plaza recorded its mortgage in December, 1954, Gaither had no "title or ownership" in the chattels named in Plaza's mortgage. It is generally held that a conditional vendee, especially when he has made part payment of the purchase price as in this case, acquires a special property which he may mortgage. 10 Am. Jur., *Chattel Mortgages,* sec. 27; Annotation, Ann. Cases 1913 C, 329.

Laying aside for the time being the question of whether

or not Alban's conditional sales contract was recorded in the proper place, Alban has no standing in this case under the conditional sales contract. It assigned the same to the Union Trust Company, which it had a right to do, and its assignee acquired the same rights that the vendor had. *Burrier v. Cunningham Piano Co.*, 135 Md. 135, 142, 108 A. 492. However, when Alban paid off the indebtedness due the Union Trust Company, it took a chattel mortgage on, at least, some of the chattels named in the conditional sales contract and other personal property. This effectively put an end to the conditional sales contract, insofar as the chattels that were covered by both of the instruments involved herein were concerned, even had there been a reassignment of the conditional sales agreement to Alban. While it is not universally so held, the weight of authority, supported by reason, is that the legal effect of a conditional vendor's taking from the vendee a chattel mortgage on the same chattels that have been conditionally sold amounts to a waiver by the vendor of the reserved title and constitutes the transaction an absolute sale, with title to the chattels passing to the vendee. It is impossible for the title to the chattels to reside in both the conditional vendor and the vendee at the same time; and, if the vendor takes a chattel mortgage on the same chattels covered in the conditional sale to secure payment of their price, he thereby admits that title is in the vendee. The result of which is that the vendor either waives his reserved title, or the sale becomes absolute, which amounts to the same thing. 47 Am. Jur., *Sales,* sec. 974; Anno., 95 A. L. R. 332; 3 Jones, *op. cit.* 1229. Consequently, the question that we must determine is: Which of the two chattel mortgages, Alban's or Plaza's, has priority?

## IV

The Chancellor further held: (a) that Alban's chattel mortgage had been properly recorded in Baltimore City in accordance with sections 45 and 46 of Article 21 (Code 1957),[3] as Gaither had effectively changed its corporate residence from Baltimore County to Baltimore City, because "for all

---

3. See also Article 23, sec. 2 (10).

580

practical purposes" Gaither had its principal office in Baltimore City at the time Alban's mortgage was executed and recorded; and (b) that Plaza's mortgage was not recorded either in Baltimore City or Baltimore County, as it had not been "chattel indexed or recorded" among any records. These findings were made before our decision was rendered in the case of *O'Toole Tire Co. v. Gaither, Inc.*, 216 Md. 54, 139 A. 2d 252.

(a)

We think the *O'Toole* case, *supra*, is controlling here, and definitely shows that this ruling of the Chancellor cannot be sustained. There, we held that the corporate residence of Gaither, as of November, 1956, had not been changed from Baltimore County to Baltimore City; therefore a deed of trust for the benefit of creditors recorded in Baltimore City conveyed no title to the trustees. Judge Hammond, for the Court, so clearly and fully set forth our reasons for so holding, with the supporting authorities, that it is unnecessary to repeat them here. The parties to that suit were not the same as those in the case at bar, but there was no evidence adduced in the trial below which differs enough from the *O'Toole* case to warrant a departure from our conclusion therein. We, therefore, hold that on December 1, 1954, the date of the Plaza mortgage, and on May 6, 1955, the date of the Alban mortgage, the corporate residence of Gaither was in Baltimore County; hence, in accordance with sections 45 and 46 of Article 21 (Code 1957), the proper place for their recordation was in Baltimore County.

(b)

As stated above, Plaza received its mortgage from Gaither, covering both real estate and chattels personal, on December 1, 1954. On that same date, it was mailed to the clerk of the Circuit Court of Baltimore County, together with a letter directing that the mortgage be recorded and a blank check be made payable to the clerk for the recording costs. The letter, the check and the mortgage were received by the clerk on December 2, 1954. He recorded the mortgage and indexed the same among the Land Records, but failed to list the same

in the chattel index. He also issued a receipt for recording the mortgage and filled in the blank check for his recording fees.

Sections 26 and 27 of Title 2 of the Baltimore County Code (Everstine 1955) [4] provide that the clerk of the Circuit Court for Baltimore County shall keep a full and complete general alphabetical index for the Chattel Records; and that when he receives an instrument for recording which affects the title to, or any interest in, both "land and personal property," such instrument "shall be * * * recorded in such Land Records only, and not in such Chattel Records, but in such case, the general alphabetical index for Chattel Records * * * shall include a notation that such instrument has been recorded among such Land Records; and such notation in such indexes shall have the same effect as if such instrument were recorded in full among such Chattel Records * * *."

The appellee contends that Plaza had previously had instruments recorded relating to both real and personal property and knew of the clerk's duty to index such instruments in the Chattel Record index as well as the Land Record index; and it was Plaza's duty and responsibility to see that the clerk properly recorded its mortgage. Alban further claims that as Plaza failed in this respect and the clerk failed to record properly the Plaza mortgage, in fact and in law, has not been recorded; hence, under the provisions of Article 21, section 48, Plaza's mortgage, as between Plaza and Alban, is invalid and of no effect.

The appellant answers by saying that its mortgage was properly recorded *by it;* that Baltimore County was the "residence" of Gaither, the mortgagor, and, in compliance with sections 45 and 46 of Article 21, Baltimore County was the only correct location in which to record the mortgage; that indexing an instrument is not an essential part of its recording; and that the mere failure of the clerk to fulfill his statutory duties did not prevent the mortgage from being "re-

---

4. See also secs. 50 and 54 of Article 17 of the Maryland Code (1957).

corded" after it had been properly deposited with him for recording.

This presents for our determination the important question as to whether the failure of the clerk to index the Plaza mortgage in the general alphabetical index for chattel records prevented it from being "recorded" under the provisions of sections 45, 46 and 48 of Article 21. Registration systems are purely of statutory origin, and the convenience or inconvenience of searching the records as well as the authority and effect of the registry acts are subjects of the legislative will. It is stated in 4 *American Law of Property,* sec. 17.25 that:

> "In spite of the fact that the whole doctrine of record notice has been developed on the basis of what a prospective purchaser will find if he makes a proper search in the indices of grantors and grantees, only a few of the statutes make the *index an essential part of the record.* (The text lists only five states.) * * * Be that as it may, the rule appears to be well established that in the absence of statutory provision to that effect, an index is not an essential part of the record. In other words, a purchaser is charged with constructive notice of a record *even though there is no official index which will direct him to it.* * * * Nevertheless, it is a rebuke to legislators, and to the legal profession, that with the few exceptions noted in the next paragraph, the courts must determine priorities on the basis of an outmoded and generally unused system of indices." (Emphasis added.)

The above is based upon the theory that although it is provided by statute that the registrar shall make an index for the purpose of affording a correct and easy reference to the books of record in his office, the index is designed, not for the protection of the party recording his conveyance, but for the convenience of those searching the records; and, instead of being a part of the record, it only shows the way to the record. See also 8 Thompson, *Real Property,* (Permanent Edition), sec. 4379; 5 Tiffany, *Real Property,* (3rd Ed.),

sec. 1274; Annotation: 63 A. L. R. 1057. Cf. *Standard Finance Co. v. Little,* 159 Md. 621, 152 A. 264.

However, we are not dealing with a situation exactly as is contended by the appellant with reference to the indexing of its mortgage. The requirement of section 26 of the Baltimore County Code, *supra,* that in cases where an instrument affects the title to, or any interest in, both land and personal property that the clerk "shall include a notation that such instrument has been recorded among such Land Records" is not for the sole purpose of affording a correct and easy reference to the book where the instrument is recorded; for the language which follows, "and such notation in such indexes shall have the same effect as if such instrument were recorded in full among such Chattel Records," makes the entry or notation in the chattel index constitute an essential part of the actual recordation of the instrument in the Chattel Records. If this were not so, we would have this anomalous situation: We would have a registry statute requiring the clerk to keep a set of Land Records, a set of Chattel Records and a separate general alphabetical index for each; when an instrument is presented for record that covers both real and personal property, the statute provides that it shall be spread upon the Land Records and *not* upon the Chattel Records, but a notation thereof shall be made in the general index of the Chattel Records, which shall have the same effect as though it were spread in full upon the Chattel Records; if this be treated as a mere failure to index and not as a lack of a complete recording, there would be no possible way for a subsequent prospective purchaser or creditor to locate the instrument dealing with personal property without a search of the Land Records, something that no one would do. We, therefore, rule that the provision of said section 26 that requires a notation in the general Chattel Record index when an instrument is recorded which affects both land and personal property is an integral part of such instrument's recordation with reference to personalty.

Plaza delivered its mortgage which covered both real and personal property to the clerk at his office for the purpose of recording, together with the costs for such recording. The

clerk spread it upon the Land Records and the general index of the Land Records, but failed to comply with the statute in noting the same in the general index of the Chattel Records. Who must suffer for the clerk's mistake? There is a division of opinion in this country as to the correct answer to this question. Some cases hold that the grantee controls the instrument; he can record it or not as he pleases; he, alone, has the right and the opportunity to see that it is properly recorded by the registration officer; hence, if he fails to give the notice required by law, he must bear the consequences, and third persons need not go beyond the records to ascertain the title of the property involved. Other cases, under certain statutes and construction of statutes, which make instruments operative as records from the time they are filed for record, hold to the contrary, and state that any error occurring after the instrument is filed for record is chargeable to third persons. 8 Thompson, *Real Property*, (Permanent Ed.), secs. 4371, 4372 and 4373; 4 *American Law of Property*, sec. 17.31; 5 Tiffany, *Real Property*, (3rd Ed.), sec. 1273.

Tiffany, *op. cit.*, and the *American Law of Property* place Maryland in the first category with the case of *Brydon v. Campbell*, 40 Md. 331. There, a deed conveyed a *four-tenths* portion of a tract of land. By mistake, the clerk transcribed it upon the register as a *fourteenth* part thereof. This Court held that a third party was only chargeable with constructive notice of what the record disclosed.

The *American Law of Property, supra,* at page 620 agrees with the *Brydon* case, and points out with force and persuasive reasoning that sound logic implies that a document deposited for record constitutes the record only until the expiration of the time reasonably required by the recording officer to copy it upon his books, and thereafter the record itself is the only evidence upon which a later purchaser is to rely, or which should be considered in deciding whether he has record notice; otherwise a purchaser's only safe course would be to insist upon an opportunity to inspect all of the original instruments in his grantor's chain of title, something that is entirely impractical. We therefore hold that as the notation of the Plaza mortgage in the general Chattel Record

index was an essential part of its recordation and the clerk failed to note it in said Chattel Record index, he failed to "record" the same in the Chattel Records, which rendered it ineffective to constitute constructive notice to third parties.

This brings us to a situation where we have two unrecorded chattel mortgages, Plaza's having been executed on December 1, 1954; Alban's May 6, 1955. Under the common law, as we shall see below, the practice of recording conveyances was unknown; therefore, in the absence of a statute making an unrecorded conveyance absolutely void after a certain time has elapsed or as to specified parties, when the question of the payment of claims arises between two holders of unrecorded conveyances, their rights are determined by priority in the execution of their conveyances. 59 C. J. S., *Mortgages,* sec. 274; 45 Am. Jur., *Records and Recording Laws,* sec. 143; 1 Jones, *op. cit.,* sec. 246. Cf. 4 *American Law of Property,* sec. 17.5, p. 545. In Maryland, we have two pertinent statutes, Code (1957), Article 21, Sections 41 and 48, that deal with the recording of chattel mortgages, but, before considering them, we shall discuss, briefly, the general background of statutes that require the recording of chattel mortgages. (All references hereinafter made to mortgages relate to chattel mortgages unless otherwise stated.)

In 1 Jones, *Chattel Mortgages and Conditional Sales,* Section 176, it is stated that, generally, the only mortgages at common law that were valid as against creditors were those accompanied by delivery of the property, and in order to do away with this requirement of delivery, statutes were enacted at an early date which permitted the mortgagor to remain in possession, provided the mortgage were recorded. Thus, in most instances, if the registration were not a substitute for the delivery of the property, it was, at least, an alternative method of publicizing the good faith of the transfer of the property involved. If there be a change of possession of the mortgaged property, there is ordinarily no need, under most of the registration acts in force, of recording the mortgage in order to make it valid against third persons: possession by the mortgagee being held to be tantamount to notice by reg-

istration. However, this is not the case in Maryland. Code (1957), Article 21, Section 48.

The principal and primary purpose of the requirement that mortgages be recorded is, as stated in the preamble to Section 5 of Maryland's first such statute, to prevent secret liens. In 1729, Maryland first enacted a statute of this nature by Chapter 8, Sections 5 and 6, of the Acts of that year (presently Section 41 of Article 21). At that time, debtors could make secret conveyances of property (if not fraudulent), and yet retain possession thereof. This Act of 1729 provided that "no goods or chattels, whereof the vendor, mortgagor or donor *shall remain in possession,* shall pass, alter or change,[5] or any property thereof be transferred to any purchaser, mortgagee or donee, unless the same be * * * recorded * * *." (Emphasis here added, and all emphasis hereafter used will be added unless otherwise stated.) It will be noticed that this statute only required recordation when the mortgagor *remained in possession* and did not change the common law with reference to such instruments when *delivery* was made to the mortgagee. Cf. *Hambleton v. Hayward,* 4 Harris & J. 443; *Gill v. Griffith,* 2 Md. Ch. 270.

By Section 123 of Chapter 154 of the Acts of 1856, the above Act of 1729 (presently Section 41 of Article 21) was continued or re-enacted in substantially its previous form; and, by Section 143 of the same act, what is now Section 48 of Article 21 was enacted for the first time, and it remains in full force and effect without change. Section 41 has had but one amendment, and that by Ch. 88 of the Acts of 1949. For purposes of convenience, we now set forth the statutes:

Section 41 as it stood upon the statute books from 1856 (and, in substantially the same form, had stood since 1729) to 1949:

"No personal property, of any description whatever, whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or change, or

5. This immediate language is borrowed from the Statute of Enrollments, 27 Henry VIII, c. 16 (1535).

any property therein be transferred to any purchaser, mortgagee or donee, unless by bill of sale or mortgage acknowledged and recorded as herein provided; but nothing herein shall be construed to extend to any sale or gift, where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto."

Section 41 as it has been the law from 1949 to the present time:

"No personal property, of any description whatever, whereof the vendor, mortgagor, or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, *as against subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, and creditors who acquired a lien by judicial proceedings on such personal property,* unless by bill of sale or mortgage acknowledged and recorded as herein provided; but nothing herein shall be construed to extend to any sale or gift, where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto." (Italicized portion added by 1949 amendment.)

Section 48 as it was enacted in 1856 and remains:

"Mortgages of personal property shall be valid and take effect, except as between parties thereto, only from the time of recording; and in case of more than one mortgage, the one first recorded shall have preference."

Section 48 made provision for, at least, two things: it required a recording of the mortgage even though delivery of the property had been made to the mortgagee in order to make it effective against third parties, and it set the effective date of a chattel mortgage as distinguished from one involving realty. Cf. *Balto. Bankers Corp. v. Peters,* 193 Md. 655, 658, 69 A. 2d 491.

Between 1856 and 1949, Sections 41 and 48 did not differ widely in either meaning or effect, and, if read literally, rendered unrecorded mortgages absolutely void and of no effect, except as between the parties thereto. However, this Court has consistently refused to construe them in that manner. For instance, in *Meyer Motor Car Co. v. First Nat. Bk.,* 154 Md. 77, 83, 140 A. 34, it is said:

> "Defectively executed or unrecorded chattel mortgages have been held to be preferred in this state as to prior existing creditors, equal to general subsequent creditors, but subject to later lien creditors whose liens were duly executed and recorded or secured. *Tyler Co. v. O'Ferrall,* 153 Md. 353; *Textor v. Orr,* 86 Md. 392; *Praeger v. Implement Co.,* 122 Md. 303, 308."

See also *Alexander v. Ghiselin,* 5 Gill 138, 180. And between 1856 and 1949, it was held that *both* Sections 41 and 48 were for the benefit and protection of *purchasers, lienors and subsequent creditors* without notice. *Roberts & Co. v. Robinson,* 141 Md. 37, 49, 118 A. 198; *In re Sachs,* 30 F. 2d 510 (4th Cir., 1929).

Also between 1856 and 1949, the Legislature in 1916 enacted what is now Section 66 of Article 21, which relates to the recording of conditional contracts of sale. Before 1949, this section made such contracts, if unrecorded, void as to "third parties without notice." It was held that "third parties without notice" under this section included subsequent general creditors, without notice, whether or not they were lien creditors. *Roberts & Co. v. Robinson, supra,* 141 Md. 43 (1922); *Friedman v. Sterling Refrigerator Co.,* 104 F. 2d 837 (4th Cir., 1939); *Beckwith Machy. v. Matthews,* 190 Md. 182, A. 2d 796 (1948). It will be noted that this was the same construction that had also been given to Section 41, as pointed out above, although the wording of the two sections, while not conflicting, was different.

Upon holding in the *Roberts* case, *supra,* that a subsequent creditor was included among the "third parties without notice" for whose protection the act (now Section 66) was

passed, it was stated: "If it [the act] had been intended to protect *only* purchasers and lienors, that purpose would have been expressed." (Emphasis added.) Whether inspired by this statement, the later cases or some other incentive we do not know, but in 1949 the Legislature repealed Sections 41 and 66 and re-enacted the same so as to afford protection under Section 66 in almost identical terms as those set forth in Section 41; but it *failed* to alter Section 48 in any manner. There is no section relating to conditional contracts of sale comparable with Section 48. The obvious purpose of the change in Section [6] 41 was to grant protection to a specified group named therein in substitution for "purchasers, lienors and subsequent creditors," as designated in the previous court decisions, *U. S. A. v. Eisinger Mill & Lumber Co., 202 Md. 613, 618, 98 A. 2d 81*; and, as purchasers and lienors are still included among those protected, it is apparent that the real change was to substitute all those named in the present act as being protected, except purchasers and lienors, in place of subsequent general creditors.

When two statutes, such as Sections 41 and 48, deal with the same subject, it is our duty to construe them together, harmonizing them so as to give full force and effect to both, if possible. *Balto. Credit Union v. Thorne, 214 Md. 200, 209, 134 A. 2d 84.* However, this is impossible in the case at bar. If full effect be given to Section 48, as construed by the previous decisions, it would mean a ruling that the indebtedness, if any, due Alban from Gaither for the articles named in the conditional sales agreement, which indebtedness was incurred before the Plaza mortgage, has the status of a pre-existing debt and is subordinate to the Plaza mortgage; and the Plaza mortgage, as a mortgage or as a lien, is ineffective as to any indebtedness incurred by Gaither to Alban for articles sold to Gaither subsequent to the Plaza mortgage on the ground that, with reference to this indebtedness, Alban is a subsequent creditor and entitled to share *pari passu* with

---

6. Section 66 is not involved in this case. Reference thereto has been made simply to trace the history of the legislation and its similarity to Section 41.

Plaza. See the quotation from the *Meyer Motor Car Co.* case, *supra*. But this would permit Alban to share as "a subsequent creditor" and defeat the legislative purpose in amending Section 41 in 1949 as pointed out above. To the extent that Section 48 is in irreconcilable conflict with Section 41, we hold that Section 48 must yield to Section 41, as it represents the later legislative expression of its will. *Auto Accep. Corp. v. Univer. Corp.*, 216 Md. 344, 353, 139 A. 2d 683. This means that the respective rights of Plaza and Alban on the aspect of the case being presently considered will be governed by Section 41.

Alban contends that it is a "subsequent mortgagee" in relation to Plaza's mortgage, and, as Section 41 provides that "no property * * * whereof the * * * mortgagor * * * shall remain in possession shall pass, alter or change * * * as against subsequent * * * mortgagees * * * unless by * * * mortgage acknowledged and recorded as herein provided" and as Plaza failed to record its mortgage, it [Alban], by the plain terms of the statute, is entitled to priority over Plaza. Plaza counters by asserting it is true that Alban's mortgage is subsequent in time to Plaza's, but the evident purpose and intention of the Legislature in the 1949 amendment to Section 41 was to take away the protection previously afforded to subsequent general creditors and to give protection to a limited, specified group; that this group consists of subsequent purchasers, pledgees, receivers and lienors; that Alban, as the holder of a subsequent unrecorded mortgage, is, in reality, nothing more than a subsequent creditor of Gaither in relation to Plaza; that the "subsequent mortgagee," who is protected against prior unrecorded mortgages by Section 41, is one who has perfected his lien on the property by recording his mortgage; consequently, Plaza's claim is superior to Alban's.

Reading Sections 41 and 48 together in the light of the previous Maryland decisions that have not required a literal compliance with the statutory language, we think Plaza's contentions are correct. It is true that it is not explicitly stated in Section 41 that the protected "subsequent mort-

gagee" must have recorded his mortgage, but we think it is implicit therein. Such a construction prevents a direct conflict with that part of Section 48 which says, "[m]ortgages * * * shall be valid and take effect, except as between the parties thereto, only from the time of recording * * *," and thereby aids, to some extent, in harmonizing the two sections. Even without the assistance from language such as appears in Section 48, a number of cases (dealing with real estate) have construed language comparable to that contained in Section 41 as requiring the "subsequent" purchaser or mortgagee to record his conveyance before he can challenge a prior unrecorded conveyance. *Simmons v. Stum,* 101 Ill. 454; *Houlahan v. Finance Consol. Min. Co.,* 82 P. 484 (Colo., 1905); 1 *Patton, Titles* (2d Ed.) Section 10, n. 25. It also promotes the general objective of the 1949 amendment, *i.e.,* to withdraw the protection given to general subsequent creditors and limit it to a small specified group, including lienors. In addition, it permits an application of the general rule, mentioned above, that in the absence of a statute that renders an unrecorded mortgage absolutely void (and this Court has consistently refused to hold that unrecorded mortgages are absolutely void under either Section 41 or 48), priority as between unrecorded mortgages is determined by priority of execution.[7] Moreover, this construction conforms to the recommendation of the *Uniform Commercial Code* (1957 Official Text), Section 9-312, p. 666, Example 2. While this is not binding upon us as it has not been adopted by the Legislature of this State, it does represent the result of much research, experience and effort by those generally recognized as being eminently qualified in this particular field of the law. And finally we find a distinct analogy and further support in principle for this construction in the rulings of the Federal

---

7. There are a few decisions holding that where there is a statute stating that an unrecorded mortgage is absolutely void as to subsequent mortgagees, etc., the later mortgage has priority whether or not recorded. They are collected in a note to Section 246 of 1 Jones, *op. cit.* As stated above, this Court has consistently refused to hold unrecorded mortgages absolutely void.

Courts relative to 26 U. S. C. A. (I. R. C., 1954) Section 6323 (a). This section provides that a federal tax lien shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the Collector, and does not, by its terms, require that the interests of the persons enumerated therein must be recorded. Whether such a requirement is implicit therein has not, as yet, been determined by the Supreme Court, but the lower federal courts have held that only a recorded interest is protected by the statute where recording is required by state law in order to render the interest valid as against third persons acting in good faith. *Exchange Nat. Bank of Tulsa v. Davy,* 13 F. Supp. 226 (D.C. Okla., 1936); *Mason City & Clear Lake R. Co. v. Imperial Seed Co.,* 152 F. Supp. 145 (D.C. Iowa, 1957); *Underwood v. United States,* 37 F. Supp. 824 (D.C. Tex., 1939), aff'd, 118 F. 2d 760 (5th Cir., 1941); *Reiter v. Kille,* 143 F. Supp. 590 (D.C. Pa.,[8] 1956). We, therefore, hold that a subsequent mortgagee, in order to prevent the title to personal property from "pass[ing], alter[ing] or chang[ing] or any property therein be[ing] transferred" to a prior mortgagee under Section 41, must have his mortgage recorded, which means that in the instant case the claim of Plaza must be preferred to that of Alban.

The Chancellor, in his opinion, stated that even if Plaza's mortgage were properly recorded, the doctrine of marshalling of assets would be applicable in regard to the additional security on real estate held by Plaza. He, of course, made no attempt to apply the doctrine, as he held that Plaza had no standing in court to assert its claim against the chattels sold. In the present state of the record, we are unable to state whether this doctrine is applicable or not; but, as the case must be remanded, it will be done without prejudice to

---

**8.** We note, however, it has been held that the failure to record the transfer has been "held immaterial where such recording was not required by state law." *United States v. Anders Contracting Co.,* 111 F. Supp. 700 (D. C. S. C., 1953); *In Re Van Winkle,* 49 F. Supp. 711 (D. C. Ky., 1943).

the rights of Alban to show a proper situation for the application of the doctrine.

*Decree reversed, and cause remanded for further proceedings not inconsistent with this opinion; the appellee to pay the costs.*